confine the matter of defective approaches to the defense of contributory negligence. It is impossible to affirm upon the theory of negligence on the part of the railroad company; or that it did not affect the jury in connection with other acts of negligence which were alleged and relied upon.

I think, therefore, that the judgment should be reversed, and a new trial ordered.

Mr. Chief Justice Marion concurs.

---

### 11209

### McCOLL v. COTTINGHAM

#### (117 S. E., 415)

1. Set-off and Counterclaim—In Action by Bank Receiver Against Legatee to Recover Overdraft, His Interest in Fund Deposited by Executors Cannot be Set Up as Counterclaim.—In an action by receiver of an insolvent bank for the amount defendant had overdrawn his account, that defendant under a will was entitled to one-eighth interest in an estate executors of which had a large amount of money on deposit at the time the bank became insolvent, and practically all their duties had been performed except to divide the money among the eight persons entitled to receive it, *held* not properly set up as a counterclaim under Code Civ. Proc., 1912, § 200.

2. Parties—Additional Parties Cannot be Brought in to Set up Counterclaim.—Additional parties cannot be brought in for the purpose of setting up a counterclaim.

3. Banks and Banking—Receivers Must Collect and Conserve Assets for Benefit of Creditors.—It is the duty of the receivers of a bank to collect and conserve its assets for the equal and pro rata benefit of creditors.

Before L. D. Lide, Special Judge, Marlboro, May, 1922. Affirmed.

Action by H. L. McColl and E. P. Miller as Receivers of the Mutual Savings Bank against Vance Cottingham. From an order striking out the answer the defendant appeals.

The following is the decree of Special Judge L. D. Lide:

The complaint herein alleges that the plaintiffs are the duly appointed receivers of Mutual Savings Bank, which had been doing business in Bennettsville, S. C., and that while in business the bank had a checking account with the defendant, and that he overdrew his account to the extent of $742.95; that demand had been made for the payment thereof, but that the same had not been paid. The prayer is for judgment for the amount named, etc. The defendant answered, practically admitting the overdraft, but alleging by way of offset that at the time the bank went into the hands of the receivers the estate of Mrs. C. V. Odom had on deposit therein the sum of approximately $28,000, of which amount the defendant was entitled to one-eighth as a "devisee" under the will, "which was fully known by the officers of said bank"; that all the debts of the estate had been paid, except approximately $300; that $16,000 of the amount on deposit had been put in the bank after the death of Mrs. Odom; that more than a year from the date of the qualification of the executors elapsed before the failure of the bank, but that the estate had not been settled because lands belonging thereto were sold in the fall of 1920, and there had been litigation among the heirs and devisees as to the method of partition and for accounting by them under the will.

The plaintiff moved to strike out the answer of the defendant on the ground that it does not set up facts sufficient to constitute a defense, the motion being therefore practically a demurrer. The motion was heard before me at at the special term of the Court of Common Pleas for Marlboro County, which convened May 8, 1922, and adjourned *sine die* May 20, 1922.

The contention of the plaintiffs is that the facts stated show no right of set-off or counterclaim, on the ground that the executors of the will of Mrs. Odom alone had title to the deposit in question, and that hence there was no mutu-

ality between the parties or cause of action existing in favor of the defendant. They also raise other collateral points.

Stating the case most strongly for the defendant, his contention in substance, may be expressed as follows: The executors of the will of Mrs. Odom had on deposit in the bank at the time it failed about $28,000, and the estate only owed about $300. My share of this deposit was one-eighth, or approximately $3,500. If this amount had been deposited to my credit, there would, of course, have been no overdraft; or if my indebtedness to the bank had been in the form of a note and this sum had been to my credit no one could question my right of set-off. The mere fact that the executors had not formally wound up the estate and distributed this money ought not to deprive me of the right of set-off, when all their duties had practically been performed except the simple one of dividing the money among the eight devisees or legatees.

At common-law the right of set-off was not recognized. Our English ancestors, like all primitive people, conceived of law as a formal science. The idea that a defendant might in the same action be an actor offended their sense of technical propriety. The right of set-off is often called a statutory creation, but in reality it had its origin in equity, the source of so many of the liberal principles now prevailing.

In this State the right to plead a set-off is governed by Section 200 of the Code of Procedure relating to counterclaims; the word "counterclaim" being a Code word covering set-off and other cross-demands. This action provides that a counterclaim must exist in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, arising out of or relating to the matters and things set forth in the complaint, or in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

The test as appears from this section of the Code is: Could the defendant have maintained an action for his interest in the deposit? In other words, did he have a cause of action arising on contract and existing at the commencement of the action? If he had sued the bank before its failure for his interest in this deposit, could he have recovered? As stated in Pomeroy on Remedies (2d Ed.), p. 789:

"The sure test is very simple. Could the defendant have maintained an independent action upon the demand if he had made it the basis of a separate suit? If he could not, then he cannot use it as a counterclaim. To this proposition there is no judicial dissent nor exception."

Tried by this test, it seems apparent that the defendant's plea of set-off cannot be sustained. Manifestly the defendant could not have maintained an independent action against the bank to recover his alleged interest in the deposit to the credit of the executors.

Defendant's counsel suggest that if the bank had attempted some action looking to the waste or conversion of the estate money or the improper payment thereof, the defendant, by reason of his beneficial interest, would surely have had the right to go into a Court of Equity and have the bank enjoined from doing so. I agree; but the right to invoke the aid of equity to conserve and protect a beneficial interest is very different from a cause of action for the recovery of money. Besides, it seems that the executors would be necessary parties to such a suit. Additional parties cannot be brought in for the purpose of setting up a counterclaim.

While in the case of *Latimer v. Sullivan*, 30 S. C., 111; 8 S. E., 639, is not precisely in point, it sets forth the underlying principles. In that case it was held that in an action by an executor to recover from defendant several notes due to testator specific and residuary legacies, given by tes-

tator to defendant, but unassented to by the executor, cannot be set up as counterclaims. The Court says:

" 'In an action by an executor, a legacy bequeathed to the defendant cannot be set off, though the executor has assets to pay the legacy.' 2 Wms. Exors., 1700. Besides, a counterclaim to be available must be either a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action, or, where the action is upon contract, any other cause of action arising also on contract and existing at the commencement of the action."

Counsel for defendant by diligent research discovered the comparatively old English case of *Bailey v. Finch, 7* Q. B. Cases, 54, and have furnished me with a copy of the decision, which I have read with a great deal of interest. This case gives some color to the defendant's claim, but I do not think he brings himself within its reasoning. In this case the plaintiff, as trustee of a bankrupt partnership, which had been engaged in the banking business, brought suit against the defendant for an overdraft on certain individual accounts. He pleaded set-off arising out of the following circumstances: A Mrs. Alexander had died leaving a will, under which defendant was sole executor and sole residuary legatee. At the time of her death she had a balance to her credit on the books of the bank. This credit was transferred to the account of Finch as her executor, and when the bankruptcy occurred there was a balance to his credit on the account. There were certain other legacies, but the admitted facts showed that the other assets of the estate were sufficient to provide for them. The Court held that the defendant having the legal title to the deposit and also the beneficial interest, the set-off should be allowed.

As is the custom in the English Courts, the several Judges gave separate opinions. Blackburn, J., says that if the account in question had been overdrawn "an action

would have lain against Mr. Finch, not as executor, but against him personally." The ration of the decision is stated by Cockburn, C. J., as follows:

"This fund, therefore, is one in which he, and he alone, was beneficially interested; and there is no equity whatever to be put in force in respect to it. It stood divested of all equitable claims upon it; it stood simply as money of the deceased, which passed into the hands of the executor, and had become the property of him as an individual. It seems to me, therefore, that the bank would have had no answer to an action brought by the defendant to recover this fund which he had deposited with them, which, as the executor of the deceased, had become his, subject to the equitable rights which legatees or other persons would have had to enforce against him. It therefore follows that he can set it off against the claim made by them upon the other accounts, which he had opened with them under the other heads of account."

In the case at bar the title to the deposit was clearly in the executors of the will of Mrs. Odom. The right and title of executors and administrators is well expressed in 23 Corpus Juris, 1172, as follows:

"The executor or administrator is the legal owner, for the time being, of the personal property of which decedent died possessed and his title and authority extends so completely to all such property as to exclude for the time being, creditors, legatees, and all others beneficially interested in the estate. The latter persons cannot follow up such property specifically into the hands of others, much less dispose of it; but the executor or administrator is the only true representative thereof whom the law will regard."

If the bank had charged up the checks of Cottingham against the estate account, such action on its part would have been obviously illegal. The right of a customer of a bank to offset his deposit is reciprocal to the bank's right to charge up a customer's indebtedness to his deposit account.

The principle of set-off, whether statutory or equitable, is remedial, and should be applied with reasonable liberality; but at the same time we cannot disregard the express limitations of the law. It is not an absolute, but a qualified, right, sometimes spoken of as a privilege. It is the duty of the receivers to collect and conserve the assets of the bank for the equal and pro rata benefit of the creditors. Of course this does not mean that the right of set-off in a proper case should be disregarded.

It is conceivable that the allowance of the set-off claimed in this case might have a peculiarly inequitable result. Merely by way of illustration, and not as stating a probability, suppose the depositors of the bank should receive only a dividend of 10 per cent., then if the set-off should be allowed the defendant will have gotten a little more than $700, while the other persons interested in the estate would get less than $400 each.

I have not overlooked the fact that the right of set-off between a bank and its customers might not necessarily rest upon the statutory provisions above referred to. It might stand upon the principle of mutual credits, but the distinction is really nominal, because the tests are practically the same. If you consider the plea of set-off here as being rather a plea of payment, the question is: Did the bank have the right to charge the checks constituting the alleged overdraft to the account of the executors? I think not, for the reasons already stated.

The question involved in this case is of more than usual interest, and I have endeavored to give it careful consideration from the various points of view suggested by counsel for the respective parties. My conclusion is that the motion should be granted.

It is therefore ordered that the answer of the defendant be, and the same is hereby stricken out, on the ground that it does not state facts sufficient to constitute a defense or counterclaim to the cause of action alleged in the complaint.

*Messrs. Tison & Miller,* for appellant, cite: *Set-off:* 8 S. C. Eq., 156; 25 S. C., 45; 39 S. C., 86; 34 Cyc., 633–4–5, 650, 719, 725.

*Messrs. McColl & Stevenson,* for respondent, cite: *Set-off not allowable:* 1 Civ. Code 1912, Sec. 2819; Code Proc. 1912, Sec. 200; 25 A. & E. Enc. L. (2d. Ed.), 519; 53 S. C., 593; 55 S. C., 531; 57 S. C., 56; Ann. Cas., 1917C, 599.

April 30, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by Hon. L. D. Lide, Special Judge, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

---

## 11212

### REYNOLDS v. SOVEREIGN CAMP W. O. W.

#### (117 S. E., 408)

INSURANCE—WHETHER ACCEPTANCE OF PREMIUM BY LOCAL CLERK OF FRATERNAL ORDER KNOWING INSURED HAD CHANGED TO EXTRA HAZARDOUS EMPLOYMENT WAS WAIVER HELD FOR JURY.—Where the local clerk had notice that a member insured in a fraternal order had changed his employment from a nonhazardous employment to that of locomotive engineer, an employment classified as extrahazardous and requiring an extra premium of 30 cents a month, but made no demand for the extra payment, collecting only the initial amount, and this member was killed in a railroad wreck four months later, whether there was a waiver, *held* for the jury.

Before TOWNSEND, J., Greenwood, April, 1921. Reversed and remanded.

Action by Mrs. Bessie Reynolds against Sovereign Camp

NOTE.—The effect of unauthorized change of occupation to extra hazardous by member of mutual benefit association on insurance certificate is discussed in note in 23 A. L. R. 341.