Argued April 11, affirmed May 29, 1928.

# ROBERT TWENTYMAN ET AL. v. W. S. NICHOL ET AL.

(267 Pac. 824.)

**Action—Action Against Broker and Surety to Recover on Real Estate Broker's Bond Held not Misjoinder of Action Ex Delicto With Cause of Action Ex Contractu (Laws 1921, p. 440, § 9).**

1. Action to recover on a real estate broker's bond executed in compliance with Laws of 1921, page 440, Section 9, held not to constitute a misjoinder of causes of action as joining a cause of action *ex delicto* against broker with cause of action *ex contractu* against surety, right of action being statutory, and bond constituting an entire contract in which principal joined; both principal and surety executing the bond jointly and severally.

**Brokers—Complaint in Action to Recover on Real Estate Broker's Bond, Alleging Fraud and Damage Resulting Therefrom, Stated Cause of Action (Laws 1921, p. 440, § 9).**

2. Complaint in action to recover on a real estate broker's bond executed in compliance with Laws of 1921, page 440, Section 9, alleging fraud of broker in sale of real estate for plaintiffs whereby they were damaged in a named sum, *held* to state facts sufficient to constitute cause of action; action being statutory, and allegations complying with requirements thereof.

**Brokers—Plaintiff, Suing to Recover on Broker's Bond, Need not Allege Demand for Restoration of Profits Fraudulently Secured by Broker (Laws 1921, p. 440, § 9).**

3. In action to recover on real estate broker's bond executed in compliance with Laws of 1921, page 440, Section 9, it was not necessary that plaintiffs plead a demand for restoration of profit fraudulently secured by broker, as institution of action constituted a sufficient demand therefor.

Brokers, 9 C. J., p. 552, n. 69, p. 553, n. 81.
Contracts, 13 C. J., p. 365, n. 66.
Principal and Surety, 32 Cyc., p. 125, n. 52.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

This was an action brought by plaintiffs Robert Twentyman and Mabel Twentyman to recover on a real estate broker's bond executed by defendant W. S. Nichol in compliance with Section 9 of Chapter 223,

General Laws of Oregon, 1921, Clark's Supplement, pages 1628, 1629, with the National Surety Company, a corporation, appellant. This section of the General Laws of Oregon, 1921, among other things relating to the licensing of real estate brokers, provides that—

"With his application the applicant shall (a) pay said commissioner a license fee of $5; (b) deliver to the commissioner a satisfactory bond to the state of Oregon in a form approved by said commissioner in the sum of one thousand dollars ($1,000) or collateral in the sum of $1,000 to be approved by the commissioner, conditioned that said applicant, if said license is issued to him, shall conduct his business as a real estate broker without fraud or fraudulent representations."

Section 10 of said act provides:

"All bonds and collaterals given under the provisions of this act after their approval shall be filed and held in the office of the commissioner. Any person who may be damaged by the fraud or fraudulent representations of such real estate broker in his capacity as such shall, in addition to other legal remedies, have a right of action in his own name on such bond or collateral for all damages not exceeding one thousand dollars ($1,000) suffered by such person by reason of said fraud or fraudulent representation of said broker."

A bond complying with the terms of said act and executed by Nichol as principal and the National Surety Company as surety was duly filed, as required by statute, with the real estate commissioner of Oregon on January 1, 1925. The complaint, after stating the corporate capacity of the defendant corporation and the execution of the bond which was set forth in full, continued with the following allegations:

"That these plaintiffs have been damaged by the fraud and fraudulent representations of the said de-

fendant W. S. Nichol, in his capacity as a real estate broker, in excess of the sum of $1,000.00, as hereinafter more particularly appears from the following recital of facts, to-wit: On the 6th day of November, 1925, these plaintiffs were the owners in fee simple of certain property in the city of Portland at or near the corner of east 33rd and Brooklyn Streets, subject to mortgage liens amounting approximately to $4500.00. That on or about said date, the said defendant W. S. Nichol was employed by these plaintiffs to sell said property for said plaintiffs; that he falsely and fraudulently represented to these plaintiffs that he was obtaining for said property at said sale the sum of $6500.00 only; that is to say, the sum of $2000.00 for the equity of plaintiffs therein, and that in order to do so it was necessary for him to enter into the deal making what he termed a 'three-cornered deal,' so that he would personally appear to trade to said parties certain property belonging to one E. W. Eastman and wife, at the corner of 34th and Jessup Streets in said city, and that these plaintiffs should pay to him, the said W. S. Nichol, a commission of $325.00, same being a 5 per cent commission on the said sum of $6500.00, said W. S. Nichol representing to these plaintiffs that he was making said deal only for the commission, and would turn the title over to another party, as he was taking the place of the other party in the contract only for convenience, and in order to consummate the deal in a smooth manner without legal entanglements. That the said statements so made by said defendant W. S. Nichol to these plaintiffs were false and fraudulent. That as a matter of fact the said W. S. Nichol was then negotiating for the sale of the property belonging to these plaintiffs to a third party, to-wit, to one Florence Berry, and was receiving from said Florence Berry for the property so belonging to these plaintiffs the sum of approximately $9350.00, or the equivalent of said sum, receiving therefor a certain note secured by chattel mortgage on a certain dairy, including 21 cows and a bull and all the equipment,

which note was in the sum of $4850.00, payable in monthly installments, and was worth the full face value thereof, same being taken in payment of the purchase price for the said property belonging to these plaintiffs, subject to the $4500.00 of mortgage liens then existing upon and against said premises; that the said W. S. Nichol, purposely and fraudulently concealed from these plaintiffs the fact that he was receiving the said sum of $2850.00 of value over and above the amount that these plaintiffs were to receive for their property under their agreement with him, but represented that he was to have but $2000.00 in value for said property over and above the encumbrances, and that he had no personal interest whatever in the deal except that he was to receive from these plaintiffs the sum of $325.00 as a commission for effecting the sale and disposition of their said property as aforesaid.

"That said statements so made by said W. S. Nichol to these plaintiffs were false and fraudulent, and were knowingly and purposely by him made for the purpose of over-reaching and defrauding these plaintiffs; that the said W. S. Nichol, at said time and place, was the agent of these plaintiffs, employed by them to assist in the disposal of their said property; that they believed and relied on the said false statements of said W. S. Nichol and acted thereon, and executed the documents necessary to effect transfer of their said property and received therefor property worth less than the sum of $2000.00, whereas the said W. S. Nichol received for their property, as aforesaid, the said promissory note worth the sum of $4850.00; and that these plaintiffs were damaged by the said fraud and fraudulent representations of said W. S. Nichol in the sum of $2850.00."

The complaint concluded with a prayer for judgment in the sum of $1,000 alleged to be due on the bond.

Defendant surety company demurred, first, on the ground that several causes of action had been improp-

erly united; and, second, that the complaint did not
state facts sufficient to constitute a cause of action.
The demurrer being overruled, the defendant com-
pany answered admitting its corporate capacity and
the execution of the bond, but denying every other
allegation of the complaint. Nichol answered by a
denial, but, not having perfected his appeal, the de-
tails of his answer are not material here. The case
was tried to a jury and a verdict and judgment ren-
dered against both defendants from which judgment
the defendant company appeals.            AFFIRMED.

For appellant there was a brief over the name of
*Messrs. Barry & Morrison,* with an oral argument
by *Mr. A. G. Barry.*

For respondents there was a brief over the name
of *Messrs. Hoy & Childers,* with an oral argument by
*Mr. Harry G. Hoy.*

McBRIDE, J.—1. Counsel for defendant with much
zeal and ability argued that there is a misjoinder of
causes of action in that a cause of action *ex delicto*
against Nichol is joined with a cause of action *ex
contractu* against the surety company. We do not
so construe the statute or the bond. The company,
in effect, undertakes that the defendant Nichol shall
not commit certain fraudulent acts and dishonesties,
and that, if he does, it will pay to the injured per-
sons damages not to exceed the sum of $1,000. This
was an entire contract in which the principal joined,
both executing the bond jointly and severally. The
promise was not illegal and was one the state had
a right to exact. In the words of an old English
case it was said: "A man may bind himself for a
consideration that it shall rain tomorrow or that he

will pay damages." The right of action is statutory and the procedure to enforce it to a great extent *sui generis.* There is no good reason why the injured parties should be required first to sue Nichols for damages for his alleged fraud, and, after obtaining judgment, then to sue the surety company to enforce the bond. The law abhors a multiplicity of suits and here the whole question can be settled in one action.

A bond similar in character, although not executed by the persons charged as delinquents, was considered in the case of *Askay* v. *Maloney,* 85 Or. 333 (166 Pac. 29), and it was there held that a surety company was properly joined in an action against the actual wrongdoers. In a subsequent appeal of the same case, 92 Or. 566, 569 (179 Pac. 899), the bond sued on was in evidence and is thus described in the opinion:

"The bond given recited that the ordinance of the city of Portland requires each member of the police force thereof to give a bond; that the Southwestern Surety Company has by bids made to the city signified its willingness to issue bonds, and that certain employees have been duly appointed members of the police force, and then undertakes to reimburse the city of Portland or any person, 'for any loss sustained by reason of the failure of any persons named in the schedule hereto attached, or additions thereto, as hereinbefore provided, * * to faithfully discharge all the duties of their respective offices according to the true intent and meaning of said ordinances, and failure to make payment for any and all damages, that may be adjudged against them by any tribunal for the illegal arrest, imprisonment or injury by him, to any person,' for the year ending February 2, 1915. The individual detectives did not sign this undertaking and its terms do not indicate

that it was intended they should subscribe it. It was executed by the insurance company alone, while the names of the individual defendants are said to be recited in the schedule attached to the instrument.''

It was held that, as the bond only undertook to *reimburse* the city or any person, *et cetera,* and make good any damages which might be adjudged, *et cetera,* it created a collateral liability only and that the surety was not liable in the first instance. The court in that case makes a distinction between a bond executed by a wrongdoer jointly with his surety and the bond which was in evidence in the case it was then considering, which was a bond not in fact executed by them but by the surety company only.

Mr. Justice BURNETT in *Askay* v. *Maloney,* 92 Or. 566, 574 (179 Pac. 899, 902), said:

''The police officers had not executed any bond. For all that appears in the complaint they may have been utterly ignorant of its existence. Their only liability, as disclosed by the plaintiff's pleading, is for tort, and breach of the contract is all that can be attributed to the company. The court was in error in not requiring an election.''

2. The distinction between the case referred to and the case at bar is plain. Here both defendants joined in the execution of the bond. In *Askay* v. *Maloney, supra,* the wrongdoing defendants never joined in the bond and, as Mr. Justice BURNETT remarked, may have been entirely ignorant of its existence. We see no ground for holding that the complaint fails to state facts sufficient to constitute a cause of action. As before remarked, the action is statutory and the allegations comply with the requirements of the statute.

3. It was not necessary for plaintiffs to plead that they had demanded of the defendant a restoration of their alleged ill-gotten gains. The action was a sufficient demand. The evidence was exceedingly contradictory, and, owing to constant technical objections by counsel on both sides, was elicited on a fragmentary condition which rendered it exceedingly difficult for the jury to comprehend clearly or appaise it.

The defendant Nichol claimed that the purchase or trade was negotiated by him for his wife and there is some testimony tending to support that contention, but the jury evidently considered this a mere ruse on his part to cover up his own trickery and considered him as the actual beneficiary. We think there was evidence sufficient to justify the verdict, although were the writer a trier of the facts he might be inclined to come to a different conclusion.

The case was fairly tried and the issues fairly stated by the court, and we are not inclined to be critical when we consider the confused manner in which the case was put in. After much time spent in considering the case, which was very ably presented here, we are of the opinion that the judgment should be affirmed and it is so ordered.    AFFIRMED.

RAND, C. J., and COSHOW and ROSSMAN, JJ., concur.