Argued March 22; affirmed June 27, 1933

HANSON ET AL. *v.* JOHNSON ET UX.

(23 P. (2d) 333)

*Donald Young,* of Eugene, for appellants Hanson and Bergman.

*Harry J. DeFrancq,* of Portland (J. S. Moltzner, of Portland, on the brief), for appellant New Amsterdam Casualty Co.

*H. E. Slattery,* of Eugene, for respondents.

ROSSMAN, J. A brief review of the evidence will facilitate an understanding of the assignments of error. In the summer of 1931 the two plaintiffs were real estate brokers. The New Amsterdam Casualty Company was the plaintiffs' surety upon their real estate broker's bond filed by them in the office of the state real estate commissioner, pursuant to the requirements of § 63-720, Oregon Code 1930. Claus Johnson and his wife, Emma, who were the two defendants when this action was instituted, were at that time residing in Santa Monica, California, where they owned a parcel of real property. At the same time C. B. and Edna Wallace owned a farm of 137 acres, situated six and one-half miles south of Eugene, near a community entitled Goshen. The Johnsons were desirous of trading their California property for a farm in this state. July 20, 1931, the plaintiffs wrote the Johnsons a letter stating: "We enclose herewith description of a 137-acre ranch near Goshen on the Pacific Highway south of Eugene. With this place we can get you all the stock and equipment and hay crops which are already harvested on the place. This man has good machinery and good team of horses, four good cows, three heifers and bull. We took the matter of a trade

for your place up with owner of this ranch this afternoon and at first he said that he would not take anything with that much mortgage on it, but we finally got him to agree to consider it. This place is located west and a little south of Goshen about one mile off the Pacific Highway. Let us hear from you. * * *''
The description of the farm mentioned in the letter was set forth upon a typewritten sheet, a copy of which follows:

"137 A. Ranch located about 7 miles south of Eugene, on Pacific Highway and one-half mile from small town and one-half mile to high school and church, on paved road. 65 A. in cultivation, 60 A. in crops consisting of oats and vetch, good drainage, black loam soil, all fenced and cross fenced. Several good springs for water supply, large house about 5 years old, barn 30x60, chicken house 40x60, brooder house, granary, machine shed, etc. Price $12,000. $2,000 loan due in 1937, 6% interest, House is wired for electricity, electricity being available at a very short distance. Owner will consider trade for good California property.

Hanson & Bergman Realty Co.,<br>119 E. Bdwy., Eugene, Ore.''

Following their receipt of this letter the Johnsons had one Powers visit the farm to which the plaintiffs referred and which is the one the Wallaces owned, and received from him a report. Powers' qualifications for such a task and the nature of his report are not disclosed by the evidence. Next, some letters were exchanged between the plaintiffs and the Johnsons, and in August of 1931 the Johnsons came to Oregon for the purpose of calling upon the plaintiffs in regard to this farm. The following day (Saturday) the latter took the Johnsons to the Wallace farm. On the same day the Johnsons signed a document prepared by the plaintiffs entitled "Offer of Exchange" in which they

offered to trade their California property for the Wallace farm. Sunday the Johnsons and one of the plaintiffs again visited the Wallace farm and later in the day the Johnsons began their return trip to California. In September they again came to Oregon, this time for the purpose of taking possession of the Wallace farm. During their absence an agreement of exchange had been effected. September 28, 1931, they paid the plaintiffs $100 cash as part payment of the commission, and signed a note—the $200 which is the subject-matter of the complaint. When this note was not paid following several demands the plaintiffs instituted this action. Upon filing their answer the defendants moved that the surety upon plaintiffs' broker's bond be made a defendant. The motion was allowed. The answer averred the employment of the plaintiffs by the Johnsons as real estate brokers to effect an exchange of their California property for an Oregon farm and their dependence upon the plaintiffs due to the fact that they (the Johnsons) were strangers in Oregon and unfamiliar with local farming conditions. Next, their answer avers that the plaintiffs, for the purpose of inducing them to accept the Wallace farm in exchange for the plaintiffs' California property, made the following representations: "(a) that there was no gumbo or adobe land upon the said Lane county property; (b) that the said Lane County real estate was well drained; and that there was no danger of water standing thereon; (c) that there were 65 acres under cultivation upon said Lane County real estate; (d) that there was a high school located within one-half mile of the said Lane County land". The answer avers that these representations were false, were made with knowledge by the plaintiffs of their falsity, that the Johnsons believed them to be true, relied upon them and were damaged thereby.

To this counterclaim the New Amsterdam Casualty Company filed an answer in which it admitted its corporate character, denied that the plaintiffs had been damaged, and denied that it possessed sufficient information to form a belief as to the other averments of the counterclaim which included an allegation that it had executed the plaintiffs' broker's bond. The plaintiffs in their reply denied all charges of fraud and averred that the Johnsons had made a full investigation of the Wallace farm before agreeing upon the exchange of properties.

The first, second and third assignments of error present the issue whether the circuit court erred when, upon the motion of the Johnsons, it made the plaintiffs' surety a party defendant. Section 1-314, Oregon Code 1930, provides: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in". The bond signed by the brokers (plaintiffs) and their surety conditioned its liability upon the provisions of 1929 Session Laws, chapter 423, which, among other matters, prohibits brokers from employing false representations in negotiating the sale or exchange of real property. In *Twentyman v. Nichol,* 125 Or. 579 (267 P. 824), we held that in a fraud action against a real estate broker the surety upon his bond was a proper party defendant. In support of their contention that the circuit court erred when it entered the above-mentioned order, the appellants cite *Ladd & Tilton Bank v. Rosenstein,* 122 Wash. 301 (210 P. 677); *McColl v. Cottingham,* 124 S. C. 380

(117 S. E. 415); *Continental Guaranty Corp. v. Chrisman*, 134 Or. 524 (294 P. 596). In the first of these cases the bank averred that it was a bona fide holder of an unpaid trade acceptance issued by the defendant and sought judgment upon it. The defendant admitted it had accepted the draft, but averred that the consideration for the instrument arose out of a contract between itself and Wade & Co., drawers, and that Wade & Co. be made a defendant. In holding that Wade & Co. were not proper parties, the court pointed out that if the plaintiff was a bona fide holder in due course of the instrument it was entitled to recover, even though the contract had been breached and that if it was not a bona fide holder the defendant had as complete a defense as if Wade & Co. were parties to the action.

In the second of these cases a depositor in a bank, when sued on account of an overdraft, alleged that a decedent's estate which was in the process of being probated, and in which he had an interest as a devisee, had on deposit in the bank a large sum of money. The probating of the estate had not yet been concluded. In holding that the defendant's allegations did not constitute a counterclaim because he could not sue the bank for any part of the deposit, the court somehow saw fit to remark: "Additional parties cannot be brought in for the purpose of setting up a counterclaim". No one had moved for an order to add parties. In the third of the above cases we pointed out that the words "the controversy" occurring in section 1-314 mean the controversy which constitutes the foundation of the complaint. We find nothing in these cases which demands a conclusion that the circuit court erred when it allowed the Johnsons' motion. The controversy which the plaintiffs brought before the court was their right to secure judgment for a real estate broker's commis-

sion. The spirit of our code of procedure favors the expeditious conclusion of litigation, and, as stated in *Twentyman v. Nichol,* supra, "abhors a multiplicity of suits". The meaning of section 1-314 is reasonably clear. We know of no occasion for undertaking to define it, thereby possibly enshackling its useful purpose with technical rules. The trial judge is an administrative officer as well as a judicial officer, and it is his duty to terminate litigation as expeditiously as possible without sacrificing the rights of any one. The surety, of course, was not liable for the commission, but the Johnsons could rightfully allege the brokers' purported fraud, not merely for the purpose of preventing the plaintiffs from recovering judgment, but also for the purpose of obtaining a judgment against them. Thus the controversy alleged in the complaint could not be completely determined without the presence of the surety. It is our opinion that the court did not err when it allowed the Johnsons' motion.

The appellants next contend that the circuit court erred when it overruled their objections to the introduction in evidence of a copy of the bond filed by the plaintiffs with the state real estate commissioner, and also of a copy of the bond filed by the plaintiff Hanson with the same official. Both copies were certified by the commissioner as being true copies of the original. These assignments of error are predicated upon contentions that the record contains no proof that the partnership bond was executed by the surety, and no proof that Hanson's bond "was signed by the plaintiffs as partners". The respondents never argued that Hanson's bond was signed by the partners, and, since it did not need the partnership signature in order to render it valid, we dismiss this contention as lacking merit. Possibly the presence of this bond in the record

was unnecessary, but it certainly exerted no prejudicial influence. The counterclaim alleges that the partnership bond was furnished by the partnership, that Hanson's bond was furnished by himself, and "that the surety named and who executed each of said bonds is the defendant, New Amsterdam Casualty Company". The plaintiffs' reply admits this averment, and the surety's answer, as we have already seen, merely denies sufficient information to form a belief as to the truth of this averment. It is manifest that the surety company must have known whether it signed the bond. A denial on information and belief of a matter of which the party was informed presents no issue: *Kernin v. City of Coquille,* ante p. 127 (21 P. (2d) 1078) ; Clark on Code Pleading, p. 405.

■ The sixth assignment of error is predicated upon the action of the circuit court in receiving in evidence the first page of a letter written upon the stationery of the plaintiffs. Before this ruling was made the defendant, Mrs. Johnson, had testified that the letter consisted of two sheets, and that although a search had been made for the second sheet, which she swore bore the signature, the Johnsons had been unable to find it. The witness testified that the second sheet was signed "Hanson & Bergman" and that this signature appeared the same as the signature upon other letters which she had received through the mails from the plaintiffs. Two objections were manifested by the appellants to the introduction in evidence of the single sheet. One was, "We object to it as being incompetent" and the other was, "I object to it unless it has got the second or other sheet". When the witness produced the single sheet the trial judge suggested, "Maybe counsel has a copy of it", whereupon the appellants' counsel produced a carbon copy and stated, "I don't

know whether that is the copy or not. It is a second sheet to a letter but I am not going to say it is the second sheet to this letter''. At this point Mrs. Johnson declared, ''I can tell by the wording of the copy'', and the record indicates that counsel for the respondents, addressing the witness, thereupon stated, ''I will show you—'' whereupon plaintiffs' attorney interrupted with ''Wait a minute. That is our carbon copy''. The trial judge thereupon ruled, ''All right. Don't give it at all, and let the other come in. I don't believe in suppressing correspondence''. Later when the plaintiff Hanson was upon the witness stand his attorney, handing him the single sheet with which we are not concerned, addressed him thus: ''Now, I will hand you defendants' exhibit 12, a letter from yourself, or a part of a letter from yourself, to Mrs. Claus Johnson. I notice you say, 'While the owner told us  *  *  *'. When you wrote this letter had you inspected the place or not?'' A. ''Yes sir''. It is apparent from this admission that the partners were the authors of the letter. Since the appellants refused to permit Mrs. Johnson, who had previously stated that she would be able to identify the second sheet if she could have access to the copy in appellants' possession, to see the second sheet, we are of the opinion that it ill becomes them now to contend that the single sheet received in evidence was not sufficiently complete to fairly reflect the ideas of the writers. The sheet is a closely typewritten page and apparently the only thing that is lacking is the complimentary close. After Hanson had admitted in the above-quoted answer authorship of the letter, neither he nor any one else undertook to supply the second page nor testify that the first page was an incomplete statement of the message conveyed by the letter. We find no merit in this assignment of error.

■ The eighth assignment of error is predicated upon the ruling of the court which sustained the respondents' objection to the introduction in evidence of a sheet of paper containing a description of the Wallace farm in the handwriting of plaintiff Bergman, and bearing the signature of Wallace. In *Medford National Bank v. Blanchard,* 136 Or. 467 (299 P. 301), we gave expression to the general rule that in order to render a misrepresentation actionable it is essential that the one making the representation knew that it was untrue or made it with a reckless disregard for the truth. Appellants contend that the document just mentioned was admissible as the foundation of the representations which the brokers made to the respondents. The card which we are now considering is a printed form, one side of which authorizes Hanson & Bergman, as agents, to represent the individual whose signature is subscribed upon the line prepared for it, and, as agents, sell the property which the card contemplates he will describe upon the reverse side in response to the numerous printed questions appearing there. Wallace's signature appears upon the face of the card and again upon its reverse side. The statements on the questionnaire side, upon which the appellants rely, are the following: "Distance to grade school .... ½. High school .... ½. Acres cleared and cultivated .... 65. Drainage, good, fair or poor .... Good. Kind and quality of soil .... Black loam". When the circuit judge sustained the objection to the offer in evidence of this instrument, he ruled that the brokers had a right to testify to any information which was given to them, and that their good faith was one of the issues in the case. Thereupon both Mr. Hanson and Mr. Bergman testified freely to all information given to them by Mr. Wallace. The instructions informed the jury that if the plaintiffs

honestly believed that they were telling the truth when they made their representations to the Johnsons they could not be liable in this action upon the counterclaim. Both Bergman and Hanson testified that the stenographer in their office made several copies of the questionnaire side of this card, and one of these copies (which we have quoted above) was received in evidence. Thus, although the instrument itself was excluded, its essence came before the jury. The rule stated in *Medford National Bank v. Blanchard* is subject to several exceptions, one of which is that if the party making the representations has good reason to know that the information which he claims he relied upon as the foundation for his representations was untrue it will not protect him: 12 R. C. L., Fraud and Deceit, p. 332, § 89. Both of the plaintiffs visited the Wallace farm before this transaction was concluded and both testified that the character of the soil, the drainage, and the fact that no high school stood within one-half mile from this farm was plainly discernible. They gave this testimony in an effort to charge the Johnsons with a knowledge of the truth, for they also had visited the farm. Thus, since the plaintiffs knew the truth before the Johnsons agreed to exchange, they could not justify their representations, if untrue, by saying that they relied upon the entries recorded upon the card. It was their duty as the paid agents of the Johnsons to tell the truth. At least two reasons demand a conclusion that this contention is without merit: (1) the plaintiffs testified at length to everything that Wallace told them, and the substance of the card was received in evidence without objection; and (2) since the entries upon the card, and the truth, as it was discernible to the plaintiffs upon their visit to the farm, did not correspond, the plaintiffs could not

justify their representations by claiming that they relied upon information imparted to them by Wallace.

█ The seventh assignment of error is based upon the action of the court in overruling appellants' motion for a nonsuit, and the ninth upon the ruling which denied appellants' motion for a directed verdict. The first motion is based largely upon the contention that since the respondents visited the Wallace farm before making the purchase they had no right to rely upon the representations of the appellants, and the motion for a directed verdict is based not only upon a repetition of that contention but also upon the contention that the evidence fails to disclose that Hanson & Bergman knew that their representations were false when they made them. We have carefully read the transcript of evidence. Both of the respondents testified that they had never lived in Oregon, that they were unfamiliar with Oregon soil, that they were inexperienced in the operation of a farm, and that they notified Hanson & Bergman when this transaction was begun that they intended to rely upon the representations made to them by their agents. The Johnsons spent no more than three hours upon the Wallace farm before they signed the exchange offer and their visit was made in the dry month of August. Two of their complaints are that the soil is adobe while the plaintiffs represented it as being black loam, and that about 30 acres of the farm are covered with water in the rainy season. Johnson and others testified that adobe is very difficult to cultivate. The testimony also indicates that a few inches below the surface of the land is a stratum of hard material which does not permit the surface waters to sink through but causes them to remain upon the top where they accumulate in large quantities in the rainy season.

Both Johnson and the plaintiffs agreed that when Johnson visited this farm before signing the contract he picked up some of the soil and expressed a belief that it was possibly adobe. According to Johnson's testimony, he was positively assured at that time by the plaintiffs that the soil was not adobe but was black loam of a desirable character. The plaintiffs were Johnson's agents, and it was their duty to make full and truthful disclosure of all material facts known to them. They could not lawfully misrepresent nor conceal: *Koehler v. Dennison,* 72 Or. 362 (143 P. 649); *Johnson v. Savage,* 50 Or. 294 (91 P. 1082). Without reviewing the evidence further, we express our conclusion that the Johnsons' visits to the farm did not render it impossible for them to rely upon the plaintiffs' representations. Whether the plaintiffs knew that the representations they were making were false was, in our opinion, an issue for the jury. These two assignments of error reveal no merit.

It follows from the preceding that the judgment of the circuit court is affirmed.

BELT and KELLY, JJ., concur.

RAND, C. J., did not participate in this decision.