Argued July 8, affirmed September 16, 1959
VINCENT ET UX *v.* THOMPSON ET AL
343 P. 2d 904

*Paul M. Reeder,* Hillsboro, argued the cause for appellants. On the brief were Gardner & Reeder.

*Fred A. Anderson,* Tigard, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Perry, O'Connell and Crawford, Justices.

PERRY, J.

The plaintiffs commenced this action in forcible entry and detainer to recover possession of real property situated in Washington County, Oregon.

The defendants, in addition to a general denial, alleged that the plaintiff A. H. Vincent had been guilty of a breach of fiduciary duty in purchasing the property of the defendant Pearl Thompson at foreclosure sale and was, therefore, in fact holding this property as a trustee for her benefit.

The defendants, as a further defense, alleged that plaintiffs informed the defendants they would permit the defendant Pearl Thompson to redeem the property if redemption was made on or before January 6, 1956, and that, although the defendant Pearl Thompson was unable to pay the necessary sum by that date, she was led to believe that it would be acceptable if made soon thereafter, and that she did tender the money on January 14, 1956, but the tender was refused. The defendants tendered into court with their answer sufficient money to redeem the property.

In reply, the plaintiffs denied generally the allegations of defendants' equitable answer, except they consented to extend defendants' right to purchase their certificate of purchase to January 6, 1956. Plaintiffs affirmatively alleged the defendant Pearl Thompson had attorned to the plaintiffs as a tenant and that she is estopped to question the landlord's title to the property.

The case was tried before the circuit court without a jury. The trial court entered a decree denying de-

fendants equitable relief and granting a judgment for the plaintiffs as prayed for in their complaint. From this decree the defendants have appealed.

The facts relating to the equitable defenses of the defendants are as follows:

■ The defendant C. H. Gregory, being in need of money, induced the defendant Pearl Thompson to borrow the sum of $3,500. This she did by placing a mortgage upon the real property which is now in controversy. Subsequently, the payments on the mortgage being in default, the holder of the mortgage commenced foreclosure proceedings and the property was sold at sheriff's sale December 30, 1954. The plaintiff A. H. Vincent purchased this property at the sale for the sum of $4,157.50. The sale was confirmed and a deed executed to him on January 12, 1956.

In the early part of October, 1954, defendant Gregory, who had signed as a maker upon the note which was secured by the mortgage on the Thompson property, went to the office of the plaintiff A. H. Vincent, a licensed real estate broker. Vincent aided clients who wished to invest in real estate loans. Gregory testified to his conversation with Vincent as follows:

"A  I approached Mr. Vincent at Tigard and asked him if he arranged through clients for real estate loans on first mortgages on property and asked him if he had a client, or anyone, who would be interested in a first mortgage on a piece of property at Metzger.

"Q  You asked him to assist you in getting a loan, is that it?

"A  That's correct, sir.

*   *   *   *   *

"Q  *   *   *  Well, just what did you ask him, Mr. Gregory?

"A    I asked him if he had a client or clients who loaned money on first mortgages.

"Q    And what did he tell you?

"A    He said, yes, that he had handled mortgages of different kinds. The fact of the matter is, he thought he had a client at that particular time who might be interested in the loan.

"Q    Did he tell you whether or not he thought he could get such a loan?

"A    Yes, he thought he could and would bring his client and have him look at the property and make his decision."

That day, or the day following, Mr. Vincent contacted a Mr. Howard and they went to look over the Thompson property. At that time Mr. Howard stated he would make a loan of $4,000 upon the property, and deposited that sum with the plaintiff Vincent. Later defendants went to the office of plaintiff Vincent and there executed a note and mortgage in favor of C. S. Howard in the sum of $4,000. Later defendant Gregory went to plaintiff Vincent to find out if the matter had been completed and he was informed it had not been because more than $4,000 was required. The record seems to bear out this fact in that taxes were delinquent at that time in the sum of $259.35. The note and mortgage were not returned to the defendants until the trial.

Plaintiff Vincent testified that he told defendant Gregory that approximately $485 in addition to the $4,000 was required. Gregory testified Vincent told him $200 was the amount. Vincent did not request Mr. Howard to increase the amount of the offered loan and told Howard that Mr. Gregory was trying to raise the extra money. Mr. Gregory was present at the sheriff's sale of the property, but he did not tender any money

to Vincent with which to purchase or redeem the property.

Plaintiff Vincent testified he decided to purchase the property after receiving a telephone call from the attorney representing Nora Clark, the plaintiff in the foreclosure proceeding; that in his estimation the property had a value of between $8,500 and $9,500.

Defendant Gregory testified he was advised by Vincent that $200 in addition to the Howard loan was required to refinance the matter and that he did not have it and was unable to get the money; that he then looked elsewhere for a loan. There can be no question but that Gregory was at all times acting on behalf of himself and the defendant Pearl Thompson.

It is the contention of the defendants that so long as the plaintiff A. H. Vincent retained the note and mortgage executed by the defendants to Howard he was their agent and, therefore, forbidden from purchasing the property for himself.

It must be conceded, under the facts of this case, that Vincent, in attempting to negotiate a loan from Howard upon the Thompson property for the benefit of the defendants, was acting in an intermediary capacity. In a certain sense, he was the agent of both parties, much as a real estate broker in effecting an exchange of properties.

█ When a person is acting in an intermediary capacity, it is his duty to make full and truthful disclosure of all material facts known to him to both parties. *Bevan v. Templeman,* 145 Or 279, 26 P2d 775; *Hanson v. Johnson et ux.,* 143 Or 532, 23 P2d 333.

There is no contention made, nor is there any evidence that would support an inference, that Mr. Vincent did not disclose to both parties all the material facts known to him, except he did not disclose to defendants

that Mr. Howard had later determined not to make the loan in the amount of $4,000. This being so, it can be said defendants believed Vincent had on hand $4,000 to use in the redemption of the property and to this extent he was acting as their agent.

Assuming, therefore, plaintiff Vincent was still their agent, because of his failure to advise the defendants of Mr. Howard's withdrawal of his loan, his retention of the note and mortgage would result, at most, in leaving in the plaintiff's hands the sum of $4,000 up to the date of the sale under foreclosure, which sum was insufficient to prevent the sale. Under such circumstances the case of *Clark v. Delano,* 205 Mass 224, 91 NE 299, 29 LRA NS 595, is directly in point. In that case a real estate broker was employed to procure a loan for the owner of property to prevent a foreclosure of a prior mortgage. The broker, being unsuccessful in procuring the necessary money for his client, attended the sale and purchased the property himself. In answer to the client's contention that a constructive trust arose out of the principal-agent relationship, the Court said (205 Mass 224, 227):

"* * * When the property was offered for sale by the auctioneer and it was no longer possible to do anything for the benefit of the plaintiff, under his employment as a broker, was the defendant, by reason of that employment, in such a relation to the plaintiff as precluded him from bidding at the auction as any other person might do? This question must be answered in the negative. His employment was terminated by conditions beyond his control. When the auctioneer began the sale, there was nothing more that he could do for the plaintiff as a broker. In reference to the sale which was going on, he stood as if he had never been employed by the plaintiff. If a sale must be made, there was nothing in his buying which was inconsistent with

his former relations to the plaintiff. He had never been employed to represent the plaintiff in any way in connection with the sale. His only employment was to procure a loan if he could, and if he succeeded the plaintiff doubtless would have prevented the sale; but when it was too late to prevent the sale, he was as free as anybody to become a bidder. In his purchase there was no constructive trust for the plaintiff. Collins v. Sullivan, 135 Mass.461; O'Reilly v. Bevington, 155 Mass. 72, [29 N.E. 54]."

The trial court did not err when it held the plaintiff Vincent in purchasing the property was not a trustee for the benefit of the defendant Pearl Thompson.

■ We find no merit in defendants' second contention, that defendants were misled as to the time in which the plaintiff would permit them to redeem his purchase of the property. Gregory was present at the time the property was sold at sheriff's sale and knew Vincent had purchased the property. He and Mrs. Thompson also were chargeable with knowledge that the period of redemption would expire one year from that time. The record clearly shows plaintiffs agreed to withhold presentation of their certificate of purchase and the acquiring of a sheriff's deed only until January 6, 1956. The only basis for defendants' belief that a further extension was granted was based entirely on the statement of plaintiffs' attorney that Vincent might be willing to extend the time further. There is no testimony that Vincent or his attorney ever agreed to extend the time beyond January 6, 1956.

■ The parties stipulated that the forcible entry and detainer action should be heard by the trial court without a jury. The defendants state the trial court was in error in hearing the evidence relative to whether or not the defendants were tenants of the plaintiff and thus estopped to deny the title of plaintiffs prior

to proceeding to hear and determine their equitable defenses; that in so proceeding first with the forcible entry and detainer case the trial court lost all jurisdiction to hear and determine their equitable defenses and, therefore, its decree denying equitable relief is a nullity; citing *Jacobson v. Wheeler, et al.,* 191 Or 384, 230 P2d 550.

■ In *Jacobson v. Wheeler et al.,* supra, p. 389, after quoting the following from § 9-102, OCLA (now ORS 16.460):

" '* * * When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are now provided for in actions of law * * *.' "

we said:

"* * * When the court heard the law case first, it lost all jurisdiction and right to hear and determine the equitable defense as a part of that action; therefore, the resulting judgment and decree for the defendant is a nullity."

While the statement is but dictum, it is erroneous and should be corrected. This statute merely abolished the necessity of bringing a suit in a court of equity and obtaining an order restraining a court of law from proceeding in the law action until the equitable matters are determined, which when determined might result

in perpetually enjoining the maintenance of the law proceedings. The act instead permits the filing of the equitable defense by way of answer in the law action. But the effect of interposing by answer an equitable defense is the same as though a court of equity had restrained a court of law from proceeding with a determination of the law action until the court of equity had determined the suit in equity, for the statute specifically provides the "proceedings at law shall be stayed until the determination" of the "suit."

The result, therefore, is that until such time as the equitable issues are determined a court of law does not lose jurisdiction, but if it proceeds contrary to the statute its acts are a nullity.

In the present case, the trial court proceeded to hear the evidence which would govern the disposition of the forcible entry and detainer case first, thus, during this proceeding, sitting as a court of law. This was done over the specific objection of the defendants. Later the same day the trial court sitting as a court of equity heard the evidence which would control the conscience of a court of equity. The trial court did not, however, announce its judgment upon the equitable or legal issues until both had been heard.

While it is true the trial court should have first determined the equitable issues raised by the defendants' answer and was in error in proceeding first to hear evidence upon those questions cognizable only in a court of law, it does not appear that the error was such as should cause a reversal of this case, because a careful consideration of the evidence adduced to support the allegations of defendants' equitable answer, as had already been pointed out, will not grant the defendants the relief prayed for.

The judgment of the trial court is affirmed.