Argued at Pendleton May 8; affirmed July 10, 1934

GRANDY *v.* WILLIAMS ET AL.

(34 P. (2d) 622)

*H. E. Dixon,* of La Grande, and *A. S. Grant,* of Baker (H. E. Dixon, of La Grande, and Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for appellants.

*R. J. Green,* of La Grande (Green & Hess, of La Grande, and Chas. J. Shelton, of Baker, on the brief), for respondent.

412

BEAN, J. The first assignment of error is that the court erred in overruling the demurrer of defend-

ant National Surety Company. It appears from the contract between Ethel R. Grandy, on the one hand, and Sherwood Williams and National Surety Company, on the other, that the funds involved in the case were trust funds belonging to the minor, Ben Rhodes Grandy, but controlled by his guardian. It is shown that she turned this money over to Williams under an arrangement whereby he was to handle the funds and assist her in the performance of her duties as guardian. He agreed to loan this money on good first mortgage securities. The bond constituted proof of a trust agreement wherein Ethel R. Grandy was the trustor, Sherwood Williams was the trustee, and Ben Rhodes Grandy was the cestui que trust. The surety company, under the terms of the bond, assumed, along with Sherwood Williams, a joint and several liability to account for and pay over on demand all of the assets of the guardianship estate of Ben Rhodes Grandy, a minor, coming into Williams' hands by virtue of said trusteeship. We refer again to that part of the bond which recites that said assets have been turned over by Ethel R. Grandy, guardian of the minor, to Sherwood Williams, as trustee. In the condition of the bond it is nominated as plain as day that Sherwood Williams "shall faithfully and truly pay over and account for all of the assets of the guardianship estate of Ben Rhodes Grandy, a minor, coming into his hands by virtue of said trusteeship, when required and demanded by said guardian".

Section 9-909, Oregon Code 1930, provides, in effect, that in order for one person to answer for a debt, default or miscarriage of another, the contract therefor should be in writing and signed by the party to be charged.

■ By the bond in question, the surety company plainly agreed jointly with Williams to pay over and account for all the assets of the guardianship estate, which were turned over to Williams prior to the execution of the bond, as well as in the future.

According to the recitals in the bond, the surety company understood that the funds had been theretofore turned over to Williams and it stood sponsor for him for that amount with its eyes open and should have fixed its premium on the bond accordingly: *Title & Trust Co. v. U. S. F. & G. Co.*, 138 Or. 467, 479 (1 P. (2d) 1100, 7 P. (2d) 805); Annotation 62 A. L. R. 412; Annotation 77 A. L. R. 861, 862; *United Brethern v. Akin*, 45 Or. 247, 250, 252 (77 P. 748, 66 L. R. A. 654, 2 Ann. Cas. 353); *In re Marks' Estate*, 81 Or. 632, 637, 638 (160 P. 540). There was no error in overruling the demurrer to the complaint. These funds were to be invested in first mortgages for the benefit of Ben Rhodes Grandy, a minor. It is specified in the bond that this was a trust. Any person who assumes a trustee's authority may be sued for an accounting: 65 C. J. § 784, pp. 885, 866; and any person having an interest in the trust may sue for an accounting: *Close v. Farmers' Loan & Trust Co.*, 195 N. Y. 92 (87 N. E. 1005, 1007, 1008).

■ Ben Rhodes Grandy, the minor, was unquestionably the proper party to bring this suit. Section 1-301, Oregon Code 1930, provides, in substance, that every action shall be prosecuted in the name of the real party in interest, with an exception which is not material here. The defendants insist that because Ben Rhodes Grandy was not specifically named as obligee in the bond that the suit cannot be maintained in his name. In *Close v. Farmers' Loan & Trust Co.*, supra,

this question was decided, as shown by the following language:

"Finally, it is insisted by the appellants that the plaintiff can maintain no action against the sureties upon the bond in question because it ran to her mother only, and she is herself a stranger to it. * * * We do not regard the name of the obligee as important, because, whatever name was inserted, the clear intention was to secure all persons whom the court by its order sought to protect. In fact it was for the benefit and protection of every person who had a direct pecuniary interest in 'the faithful performance by the principal of his duties as such trustee' under said will."

The intention of a bond of this character is to protect the funds and the real obligee, even though he is not named in the bond: *Campbell v. O'Neill*, 69 W. Va. 459 (72 S. E. 732), from which we quote:

"The answer admits receipt by the defendant of the $2,000, collected on said insurance policy, and that he had received the same from the administrator of M. B. Campbell, supposing that he had been regularly appointed guardian for the said infants, but finding that he had not been so appointed, he denies liability to plaintiff, averring that his liability, if any, is to the administrator, from whom he received the same, and not to plaintiff."

The same opinion quotes from 21 Cyc. 152, as follows: "If the guardian has appointed an agent to manage the estate, he may be required to file and settle an account of his agency." See also *Cleveland v. Cohrs*, 10 S. C. 224.

The second ground of demurrer by defendants is based on the claim that no suit could be commenced against the National Surety Company until an accounting had been had between Ethel R. Grandy and Sherwood Williams and approved by a court of competent

jurisdiction. The obligation contained in the bond signed by the surety company and Sherwood Williams was a joint and several obligation, creating a joint and several liability. *Bellinger v. Thompson,* 26 Or. 320 (37 P. 714, 40 P. 229). Section 1-310, Oregon Code 1930, provides thus:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes may, all or any of them, be included in the same action, at the option of the plaintiff."

Unquestionably the principal and a surety may be sued together: § 1-310, Oregon Code 1930; *Bowen v. Clarke,* 25 Or. 592 (37 P. 74); *Closset v. Portland Amusement Co.,* 134 Or. 414, 421, 422 (290 P. 556, 293 P. 720).

In *Twentyman v. Nichol,* 125 Or. 579, 584 (267 P. 824), this court gave the reasoning of such holding in the language of Mr. Justice McBRIDE, as follows:

"The right of action is statutory and the procedure to enforce it to a great extent *sui generis.* There is no good reason why the injured parties should be required first to sue Nichol for damages for his alleged fraud, and, after obtaining judgment, then to sue the surety company to enforce the bond. The law abhors a multiplicity of suits and here the whole question can be settled in one action."

Defendants refer to cases on official bonds. There is a difference between an official bond, which is given where the principal is elected or appointed to an office for a definite term, and the bond in question. The bond in suit was given after the appointment of Williams and relates back to the time when he received the property belonging to the estate. Mr. Williams had no legal tenure of appointment as agent or trustee. See *Ellyson*

*v. Lord,* 124 Iowa 125 (99 N. W. 582, 587, 588) ; *Greer v. McNeal,* 11 Okla, 526 (69 P. 893, 896, 897).

■ The body of the bond, to which we have referred, whereby Williams and the surety undertake to faithfully and truly pay over and account for all the assets of the guardianship estate coming into Williams' hands, we think, shows the liability of the surety company. The fact that the bond shows that it was executed with "the distinct understanding that the liability hereunder of the principal and surety begins February 18, 1930", the date on which it was signed, we think, does not change the main provisions of the bond. Apparently the date of the signature, as well as the year for which the bond was given, was fixed for the purpose of arranging the premium thereon, and for no other purpose. The paragraph of the bond, which we have already quoted, as follows:

"WHEREAS, certain assets of the guardianship estate of Ben Rhodes Grandy, a minor, have been turned over by Ethel R. Grandy, legal guardian of the said minor, to Sherwood Williams as trustee, for the purpose of safe keeping, handling and assisting the guardian in the performance of her duties"

together with the other language of the bond, to which we have already referred, forecloses the question as to the liability of the surety company for the funds turned over to Williams. See *Bellinger v. Thompson,* supra; *United Brethren v. Akin,* supra; *Common-Wealth v. Fid. & Dep. Co.,* 224 Pa. 95 (73 Atl. 327, 132 Am. St. Rep. 755) ; *Meyers v. Block,* 120 U. S. 206 (7 S. Ct. 525, 30 L. Ed. 642).

Section 32-801, Oregon Code 1930, provides thus:

"All trustees residing or transacting business in Oregon are hereby made accountable for the faithful execution of the trust imposed upon them, according to the terms of any such trust."

The surety company, when writing this bond, was chargeable with the knowledge of this statute, and, accordingly, as we have already noted, it was aware of the fact that the fund had already been turned over to Williams and that Williams was a trustee of the funds belonging to the minor. We quote from the syllabus of *McLeod v. Despain,* 49 Or. 536 (90 P. 492, 92 P. 1088, 19 L. R. A. (N. S.) 276, 124 Am. St. Rep. 1066) :

"A person who learns of unusual circumstances connected with a transaction in which he is about to become interested, or of such facts as would put a person of ordinary prudence upon inquiry, as, that a note is payable to the payee, 'trustee,' or that a title is held by a person 'trustee,' is bound thereby to a knowledge of what could have been discovered by investigation."

In *Bellinger v. Thompson,* supra, at page 339, we find the following:

"Moreover, the sureties on his bond as executor are estopped from asserting that he had ceased to be an executor, and was only a trustee. In all cases where the condition of the deed has reference to any particular thing, the obligor shall be estopped to say that there is no such thing."

The bond was given to protect Ethel R. Grandy, as guardian, in the payment of certain funds that had been turned over to Sherwood Williams. While the amount of assets mentioned in the bond is not perfectly definite, it is susceptible of ascertainment. The bond in question shows that certain assets of the guardianship estate of Ben Rhodes Grandy, a minor, had been turned over by Ethel R. Grandy, the guardian, to Sherwood Williams, as trustee, and with that knowledge, whether the surety company ascertained the amount which was turned over or not, it bound itself, together with Wil-

liams, to faithfully and truly pay over and account for all of such assets. The bond in question differs from a fiduciary bond, which undertakes to guarantee the faithful and honest discharge of duties by an employee named in the bond from and after its date.

■ It is the rule that, in the absence of an express provision in the surety bond or guarantee bond to the contrary, the surety is not liable for defaults of the principal committed before the execution of the bond or policy: Annotation 77 A. L. R. 868. Where the bond is not a general one to secure the faithful performance of the trust, but a special one to secure the payment of a certain sum of money, an action is maintainable thereon prior to the settlement of the trustee's accounts: 65 C. J. 1084, § 1017, cited by defendants.

■ This is not an accounting by the guardian, Mrs. Grandy, and the county court is not the proper forum for the hearing and determination of the matters involved. The probate court was not required to approve the bond sued on and is not concerned with the same. The fact that Mrs. Grandy finally will be responsible for her administration, as guardian, did not prevent the taking and enforcing of a bond to protect the assets of the guardianship estate of Ben Rhodes Grandy from her agent or banker, Sherwood Williams, who was employed by her to assist and handle the funds of the estate so as to invest the same and cause them to earn something. We must look at the bond in order to determine the purpose thereof and the liability of the surety thereon. It appears that there were no funds of the estate to be turned over to Williams after the execution of the bond. The only protection afforded by the bond was for an accounting and paying over by Williams of funds which he had already received from Mrs. Grandy, as guardian, at the time of the drafting

and execution of the bond. In so far as it appears, the surety company prepared the bond itself. Apparently its officers had implicit confidence in Williams, who is said to have been the resident agent of the surety company. Mr. Williams was president of the La Grande Investment Company, which did business after his bank had liquidated, and it appears that he weathered the financial storm for some considerable time. He purchased contracts for the sale of real estate, upon which there had been little or nothing paid, at a discount of 10 to 15 per cent, and turned them over as an investment of the funds of the Ben Rhodes Grandy estate, and paid the money out on second mortgages with very flimsy security, and practically loaned money to himself. If the construction of the bond by the defendant company prevails, then the dates mentioned in the next to the last paragraph of the bond would practically annul the effect of the bond. The bond, which recited that the assets of the guardianship estate had been turned over by Ethel R. Grandy, guardian, to Sherwood Williams, was executed and accepted by the guardian. It contains the plain language that Williams would faithfully and truly pay over and account for all of the assets of the guardianship estate of Ben Rhodes Grandy. There was no known default on the part of Williams at that time. The following quotation from *Commonwealth v. Fid. & Dep. Co.*, supra, at pages 757 and 758, is somewhat analogous:

"When the new bond was given and approved, the entire assets of the trust estate had already been received by the trustee, and were represented by the securities and investments on hand at that time and about which appellant was informed prior to its becoming a surety. No default had then been declared, and neither the trustee nor the cestui que trust, nor the surety, was in position to say that there was an exist-

ing default. These securities may or may not have been good at that time. If they should subsequently be realized on, there would be no default; if not realized on in full, there might or might not be a default depending upon the gross negligence of the trustee. The entire trust estate was intact in the hands of the trustee to the extent of the securities held by him and exhibited to the bonding company when the new bond was taken. The most that can be said of the situation at that time is that the value of the securities may not have been known or ascertained.''

The uncontradicted testimony shows that Mrs. Grandy, the guardian, did not suspect that Williams had misappropriated any funds until about July, 1930, at the time the matter of the McKinnis note was brought to attention, and long after the execution of the bond in question. The McKinnis note was an old one that had been in the bank at Imbler, of which bank Sherwood Williams purchased the majority of the stock for twenty-five or thirty cents on the dollar and turned this old note over as an investment of the funds of the guardianship estate.

■ If the contention of the defendant is correct, that the provisions of the bond are in conflict, then the rule which is well settled, that if a bond executed by a paid surety is susceptible of two constructions, one favorable to the insured and one favorable to the insurer, the construction will be adopted which favors the liability of the insurer, must be invoked: *Title & Trust Co. v. U. S. F. & G. Co.*, supra; Annotation 77 A. L. R. 861; Annotation 62 A. L. R. 412.

By the terms of the bond, Williams undertook to account for the funds and assets he had received on demand. As said in *Bellinger v. Thompson*, supra:

''The bond is security against a breach of duty, and there is no such breach until there is a failure to ac-

count or pay over the money, as ordered by the county court: Schouler on Executors, § 148; 1 Woerner on Law of Administration, § 255.'' See also Bromen v. O'Connell, 185 Minn. 409 (241 N. W. 54, 82 A. L. R. 583).

■ Defendant surety company urges that there was no continuation certificates executed containing the bond in question. In paragraphs II and III of the answer of the surety company, as we read it, defendant acknowledges the execution and that the bond is in force, but contends that it does not apply to investments made by the defendant Sherwood Williams prior to the execution of said bond. The annual premiums on the bond, it is shown, were regularly paid and it must be presumed that the certificates were issued. The point is not well taken.

There is practically no question in regard to the liability of Sherwood Williams, as shown by the brief of the defendants.

We have carefully read all of the testimony in the case, and it amply supports the allegations of the complaint. The decree of the lower court is in accordance with the testimony.

■ The plaintiff is entitled to recover attorney's fees from the defendant surety company. It is not important that the amount for which a certain defendant is liable differs from the amount for which another defendant is liable. See *Closset v. Portland Amusement Company*, supra, at p. 421.

The decree of the circuit court is affirmed.

RAND, C. J., and CAMPBELL and BAILEY, JJ., concur.