Argued October 17, affirmed December 19, 1951

# POLANSKI *v.* POLANSKI
238 P. 2d 739

*Ralph E. Moody* argued the cause for appellant. On the brief were Moody & Lamkin and Douglas L. Hay, of Salem.

*John F. Steelhammer,* of Salem, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

LUSK, J.

The defendant has appealed from a decree granting the plaintiff a divorce and awarding her certain portions of his properties.

We have carefully examined the testimony, and think it is sufficient in this case to state our conclusion that the court was right in its decision that the plaintiff was entitled to a divorce. In that regard the decree will be affirmed.

The question that has given us most concern has to do with the property award.

The parties are owners as tenants by the entireties of the following properties in Salem, Oregon: Their home; an adjoining property known as the Home Court, consisting of six small houses which are rented to tenants; an apartment house known as the Romeo Apartments; and an apartment house referred to in

the record as the South Commercial property. The value of all these properties, over and above encumbrances is upwards of $45,000. Mr. and Mrs. Polanski also owned as partners a business known as the Broadway Appliance Company. The evidence as to the value of this business and as to the respective interests of the partners is indefinite.

The decree, dated September 9, 1950, awarded to the plaintiff the defendant's interest in the home, in the Home Court, and in the South Commercial property, together with the furniture and fixtures in such properties; ordered that the defendant pay all amounts becoming due before July 1, 1950, on notes secured by mortgages on such properties, as well as accrued indebtedness for their operation and management to and including June 30, 1950; that the rents and other income therefrom, accruing subsequent to June 30, 1950, shall be the property of the plaintiff; that any money that may be received on a claim for refund of income taxes which has been made by the defendant shall be his property; that the defendant shall pay all debts of the Broadway Appliance Company, now or hereafter to become due; and that "the plaintiff will assume sole and individual liability for any obligations which may be the result of any mortgage foreclosures brought against the property awarded to the plaintiff by this decree."

In a memorandum opinion of the circuit judge, dated July 27, 1950, it is stated, in substance, that the award to the plaintiff would be made subject to certain conditions, namely, that the plaintiff convey to the defendant her interest in the Romeo Apartments and in the Broadway Appliance Company. Thereafter, and prior to the entry of the decree, the plaintiff executed a quitclaim deed conveying her in-

terest in the Romeo Apartments to the defendant, and an assignment to him of her interest in the Broadway Appliance Company. These instruments, according to a stipulation of counsel for the respective parties, were presented to the trial judge and then lodged with the county clerk of Marion County. The stipulation further provides that the deed and the assignment may be filed with this court for its consideration, and these instruments were accordingly filed here.

■ ■ The statute, Ch. 557, Oregon Laws, 1947, amending § 9-912, O. C. L. A., as amended by Ch. 407, Oregon Laws 1941, provides:

> "Whenever a marriage shall be dissolved or annulled, the party on whose prayer the decree shall be given and made thereby shall be awarded in his or her individual right such undivided interest in, or in severalty, such part or parts or the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at the time of such decree, as may be just and proper in all the circumstances, in addition to the further decree for maintenance provided for in section 9-914."

Under this statute, neither the Circuit Court nor this court has the power to award to the party against whom the decree is given any interest in the property of the other party. See *Gibson v. Gibson,* (this volume). The Circuit Court made no such award.

The decree mentions neither the Romeo Apartments nor Broadway Appliance Company, and we take it that the court, being advised of the execution of the deed and assignment, treated them as evidence of a willingness on the plaintiff's part to comply with the conditions laid down in its opinion. In a brief filed with this court plaintiff's counsel has treated her

interest in the Romeo Apartments and in the Broadway Appliance Company as the property of the defendant for the purposes of the decree. We, therefore, regard her action in filing the deed and the assignment with this court as a voluntary offer on her part to deliver these instruments to the defendant, thereby relinquishing her interest in those properties, in the event that the decree shall be affirmed.

The values of the parcels of real property to which the plaintiff would be entitled under the decree are, according to the evidence, as follows:

The home—$19,000, less mortgage of $8,350 .... $10,470
Home Court—$38,000, less mortgage of $23,028 $14,972
South Commercial property—$10,000, less
    mortgage of $4,453 ......................................... $ 5,547

      TOTAL ........................................................ $30,989

The evidence shows that the value of the Romeo Apartments is $30,000, subject to a mortgage in the sum of $13,669, or a net value of $16,331.

■ The evidence as to the value of the Broadway Appliance Company is, as stated, unsatisfactory. While there is some evidence from which it could be found that after payment of the indebtedness in the amount of $5,200, the property is worth nearly $10,000, it also appears that the partnership was losing money and was badly involved. The circuit judge, who evidently gave the question careful consideration, said in his opinion that the evidence was "insufficient to enable the court to intelligently determine the respective interests in, or the value of, the Broadway Appliance Company." We concur in that conclusion.

The claim for refund of income taxes, determined by the decree to be the property of the defendant, is in the amount of approximately $1,700.

■■ In *Siebert v. Siebert,* 184 Or. 496, 503, 199 P. 2d 659, we stated that among the matters to be considered in awarding alimony are the following:

"* * * The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living. * * * The conduct of the parties may enter into the determination of the amount of alimony to be allowed. Where the wife is free from blame, the allowance will be greater than if her conduct was conducive to her husband's fault."

The parties were married in Salem in 1928 and have lived in that city ever since. They have two children, a son and a daughter, who are both of age. The defendant is a cement contractor by occupation. He is evidently a man of great industry and considerable business acumen.

Mrs. Polanski had no property at the time the parties were married. Mr. Polanski then owned a half block in Salem on which are located their home and the Home Court, and for which he paid $1,550. In 1930 he was stricken with a serious illness, and for eight years thereafter was unable to work. During that time Mrs. Polanski worked and supported the family, earning enough to keep up the payments on the mortgage on the home property. After Mr. Polanski regained his health he saw the opportunity created by the approach of war to make money in the construction business, and, through his initiative, judgment and industry, he and his wife acquired the properties they now own. She aided in their enterprise by helping to clean the houses before they were sold, inter-

viewing prospective buyers, renting houses, and collecting the rents. So far as the record shows, her health is good. She is apparently a woman of education. When her difficulties with her husband came to a climax in September, 1949, she left home and went to live with her parents, and secured a position as school teacher which paid her $2,500 a year.

The defendant is in his fifty-second year. At the time of the trial in March and June, 1950, he was having difficulty meeting the obligations on the mortgage. The Home Court was the only one of the income properties which was paying its own way, and the testimony indicates that the total expenses of all three of these properties, taken together, were exceeding the total income. Before the trial below, Polanski had arranged for the sale of the Broadway Appliance Company, but Mrs. Polanski had refused her consent to the transaction.

It will be advantageous to both parties if their interests in the commonly held properties are severed, for one of the causes of the disruption of their marriage has been disagreement, at times reaching a pitch of violence, over business policies. The defendant once struck his wife in the face when they were quarreling over a matter of that kind. On the other hand, according to his testimony, Mrs. Polanski's interference with the management of their properties has caused them the loss of $60,000 to $70,000. After the end of the war it was the defendant's judgment, based upon what seem to us to be sound reasons, that the time to sell had come. Mrs. Polanski disagreed. They could have sold the Romeo Apartments for $42,000, but she refused to join in the sale, and the property thereafter greatly depreciated in value. These differences are not likely

to end with a divorce should their common ownership be continued.

■ Weighing these various considerations, and not losing sight of the fact that the defendant is still a comparatively young man with the ability to work and to make and save money, we are of the opinion that the award to the plaintiff is "just and proper in all the circumstances." One of these circumstances, of course, is the tender by plaintiff to the defendant of her interest in the Romeo Apartments and the Broadway Appliance Company. Counsel for defendant suggest that, the offer being purely voluntary, it may be withdrawn. We assume, however, that it is made in entire good faith.

If, within twenty days from the rendition of this opinion, due proof shall be filed with this court that the plaintiff's deed to the Romeo Apartments and the assignment of her interest in the Broadway Appliance Company, now on file here, have been delivered to the defendant and accepted by him, a decree will be entered affirming the decree of the Circuit Court. If such instruments are not so delivered, the cause will be remanded to the Circuit Court for the purpose of reconsideration of the property question and the making of a new award. Plaintiff is allowed her costs and disbursements.

LATOURETTE, J., Dissenting.

I agree with the majority that plaintiff is entitled to the divorce, but I disagree with the formula adopted for the disposition of the property of the parties.

Under the law, as laid down in *Gibson v. Gibson*, (this volume), we are without power to order the plaintiff in this case to turn over any of her property to the defendant since she is the successful party, yet,

doing indirectly that which we cannot do directly, we hold a sword of Damocles over her head and say, "Do this—or else!" It is judgment by compulsion rather than by law. It is my view that her deed to him would be without consideration and might lead to future litigation.

The purpose of so dividing the properties is clearly stated in the language of the prevailing opinion: "It will be advantageous to both parties if their interests in the commonly held properties are severed, * * *." In other words, the majority opinion is in reality partitioning the respective properties of the parties for which no authority is found in the divorce statutes of our state. It is the settled law that a court, proceeding in divorce matters, is a court of limited jurisdiction, and its powers are circumscribed by the statutes thereto appertaining. If a severance of property interests is desirable in a divorce proceeding, the legislature should first act instead of the court's invoking a novel and, I believe, dangerous and troublesome precedent. I, therefore, dissent.