Argued May 2, reversed and remanded August 3, former opinion
modified October 5, petition for rehearing denied
October 5, 1955

# ESSELSTYN *v.* CASTEEL ET AL

286 P. 2d 665
288 P. 2d 214
288 P. 2d 215

*James C. Dezendorf,* Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf, James H. Clarke and Joseph Larkin, Portland.

*John F. Kilkenny* argued the cause for respondents. On the brief were Kilkenny & Fabre, Pendleton.

Before WARNER, Chief Justice, and TOOZE, ROSS-MAN, and LUSK, Justices.

LUSK, J.

This action was brought by Beulah A. Esselstyn to recover damages from Mrs. Elbert B. Casteel, formerly county clerk of Umatilla County, Oregon, and National Surety Corporation, the surety on her official bond, claimed to have been caused by the neglect of Mrs. Casteel in failing to docket an alleged judgment. The defendants filed a motion to strike material portions of the complaint. The motion was allowed, and the defendants then filed a demurrer to the complaint which was sustained. The plaintiff refused to plead further, and judgment was entered for the defendants from which the plaintiff has appealed. The principal question presented is whether the complaint states facts sufficient to constitute a cause of action against the defendants.

The complaint alleges that the defendant Mrs. Casteel was, on June 4, 1948, and, thereafter, until January 1, 1951, the county clerk of Umatilla County, Oregon; that prior to June 4, 1948, plaintiff, who was married to one Charlie L. Gray, brought a suit for divorce in the Circuit Court of the State of Oregon for Umatilla County against her husband; and that on June 4, 1948, the court entered a decree of divorce in such suit in favor of the plaintiff, and by such decree awarded judgment in favor of the plaintiff and against Charlie L. Gray, the defendant therein, in the sum of $8,000.00, payable in monthly installments of $150.00 each, the first payment to be made on or before June 10, 1948, and a like monthly payment on or before the tenth day of each succeeding month until the full sum

of $8,000.00 should be paid to the plaintiff. A copy of the decree is attached to the complaint. The portion thereof material to the present controversy reads as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the property rights of the plaintiff and defendant, are determined according to the stipulations entered into by these parties and introduced in evidence which stipulation omitting the heading, is as follows, to-wit:

"Now, therefore, it is hereby stipulated and agreed:

"That the husband shall pay to the wife as property settlement the sum of eight thousand dollars, payable in monthly payments of $150.00 each, without interest and first payment to be made on or before June 10th, 1948 and a like monthly payment on or before the 10th day of each succeeding month, until the full sum of eight thousand dollars has been paid.

"IT IS FURTHER, stipulated and agreed that the wife is to have the following furniture and equipment now located in the home of the parties at Echo, Oregon: Namely: * * *

"IT IS FURTHER, stipulated and agreed that the wife is to have free rental of the beauty shop portion of the building at Echo, Oregon, that she is occupying as such until said full sum of Thirty-six hundred dollars has been paid to her, and the husband further agrees during said period to pay one half of the heating, electricity and water costs as used in said building, until the said sum of thirty-six hundred dollars has been paid. A 1940 Buick sedan is now in the name of wife, and is to be transferred to husband and to become property of husband.

"IT IS FURTHER, understood and agreed, that this is a full, and complete settlement of all property rights, existing between the parties hereto, and that all the rest and remainder of the property,

whether real, personal or mixed, now standing in the name of either the husband or the wife, shall remain the sole and separate property of the husband or the wife, in whose name the property now stands, and neither of the parties hereto shall have any right, title, interest or estate, in or to the said property, standing in the name of the other, or any part thereof, except such as may arise by reason of this agreement.

> "BEULAH A. GRAY
> First party (wife)
>
> "CHARLIE L. GRAY
> second party (husband)

dated and entered this 4th day of June, 1948.

> "/s/ Homer I. Watts
> Circuit Judge"

The complaint continues by alleging that on June 4, 1948, Charlie L. Gray was the owner in fee simple, free and clear of all encumbrances, of the following described real property located in Umatilla County, Oregon, to-wit: Lots Five (5), Six (6), Seven (7) and Eight (8), Block Seven (7), Brassfield's Addition to the Town, now city of Echo; that the defendant, Mrs. Elbert B. Casteel, as county clerk of Umatilla County, Oregon, failed and neglected to docket the said decree in the judgment docket of Umatilla County at the time it was entered or at any time thereafter; that on the 10th day of June, 1948, Charlie L. Gray mortgaged the real property above described to Frank Young and Cecil A. Young, who had no actual knowledge or notice of the judgment of the plaintiff hereinabove referred to; that the said mortgage was acknowledged on the 12th day of June, 1948, and recorded on the 17th day of June, 1948, in the mortgage records of Umatilla County, Oregon, and at that time became and ever since

has been a first lien upon the real property above described. It is further alleged that between June 4, 1948, and November 1, 1950, Charlie L. Gray paid to plaintiff the sum of $3,990.00 on the described judgment for $8,000.00, and that there is now due and owing thereon the sum of $4,010.00 together with interest at the rate of six percent per annum from November 1, 1950; that Charlie L. Gray died on August 14, 1952, a resident and inhabitant of Umatilla County, Oregon; that at the time of his death his assets were insufficient to pay his debts and his estate was and now is insolvent; that there is now due, owing and unpaid upon the note secured by the mortgage above described, approximately $5,000.00; that the value of the property covered by said mortgage does not exceed the homestead exemption of Goldie Mae Gray, the widow of Charlie L. Gray, and the balance due on the mortgage; and that the value of said property other than the homestead exemption does not exceed the amount of plaintiff's unpaid judgment. It is further alleged that by reason of the neglect and delinquency of the defendant, Mrs. Elbert B. Casteel, in failing to docket the decree above described, plaintiff has been damaged in the amount of $4,010.00, together with interest thereon at the rate of six percent per annum from November 1, 1950; that on April 26, 1954, plaintiff made a written demand upon the defendants for the amount aforesaid, but payment has been refused, and that the sum of $1,-500.00 is a reasonable amount to be awarded plaintiff as an attorney's fee. Judgment was demanded accordingly.

LUSK, J.

The principal question raised by the demurrer is whether the provision in the decree in the divorce suit

for the payment by the defendant in that suit to the plaintiff of the sum of $8,000.00 in monthly installments of $150.00 each as a property settlement is a judgment.

In this state a judgment is defined as "the final determination of the rights of the parties in an action": ORS 18.010. The same section provides: "The final determination of the rights of the parties to a suit is called a decree, and any intermediate determination is called an order."

The following provisions of ORS state the duties of the clerk with reference to judgments and decrees and the effect of docketing a judgment:

18.030. "All judgments shall be entered by the clerk in the journal, and shall specify clearly the amount to be recovered, the relief granted, or other determination of the action."

The foregoing is made applicable to suits by 18.020.

18.320. "Immediately after the entry of judgment in any action the clerk shall docket the same in the judgment docket."

The foregoing is made applicable to suits by 18.310.

18.350. "(1) From the date of docketing an original or renewed judgment or the transcript thereof, as provided in ORS 18.320, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time prescribed in ORS 18.360."

The corresponding sections of OCLA in effect at the time of the entry of the decree in the divorce suit were not different in meaning from the sections of ORS above set forth.

If, therefore, the provision of the decree in question constitutes a judgment, it is clear that the complaint

states a violation of the clerk's statutory duty, as prescribed by ORS 18.320.

■■ The parties are agreed that that portion of the decree is intended to be a settlement of property rights, rather than an award of alimony. Inasmuch as the decree expressly states that "It is further ordered, adjudged and decreed, that the property rights of the plaintiff and defendant, are determined according to the stipulations entered into by these parties", we concur in this view of its meaning. The fact that the decree makes the sum of $8,000.00 awarded to the plaintiff payable in installments, does not affect this conclusion. *Putnam v. Putnam,* 104 Kan 47, 177 P 838; *Seyfert v. Seyfert,* 206 Wis 503, 240 NW 150; *Madden v. Madden,* 5 Oh N P (ns) 593, 604, reversed on other grounds 11 Oh Cir Ct (ns) 238. In *Prime v. Prime,* 172 Or 34, 42-43, 139 P2d 550, the court, by way of dictum, indicated that an executory agreement for future periodical payments, as a part of a division of property, when approved and incorporated in a decree, would be held invulnerable to modification even in the event of changing conditions. We there called attention to the difficulty sometimes encountered in drawing a line between "approved agreements in the nature of alimony which are subject to modification and approved agreements in the nature of an annuity employed as a means of adjusting the wife's property rights." It should be observed that the Prime case was decided in 1943 before the enactment of the statute (hereinafter set forth) giving the court a wide discretion in granting to the prevailing party property of the other party. Under the former statute the court was limited to awarding to the party not in fault a third of the real estate owned by the other party, although it might give effect by its decree to an agreement stipu-

lating for a settlement not in accord with the statute. *Prime v. Prime,* supra at pp. 49-50. Since, today, the court may, without a stipulation, make an award of property in favor of the prevailing party based on its own judgment as to what is fair and equitable, we see no reason why, in the absence of countervailing evidence, the court's characterization of an award, which is "in the nature of an annuity", as a determination of property rights should not be accepted at its face value.

The defendant contends that the court was without power to enter a judgment against the defendant by way of a property settlement. The argument is that the divorce court has only such jurisdiction as the legislature has conferred upon it and that there is no language in ch 557, Oregon Laws 1947, which provides for the entry of a money judgment on the settlement of the property rights. That statute, in force at the time of entry of the divorce decree, read:

> "Whenever a marriage shall be dissolved or annulled, the party on whose prayer the decree shall be given and made thereby shall be awarded in his or her individual right such undivided interest in, or in severalty, such part or parts or the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at the time of such decree, as may be just and proper in all the circumstances, in addition to the further decree for maintenance provided for in section 9-914."

■ The 1947 statute is the successor to OCLA 9-912, which provided that the prevailing party "shall in all cases be entitled to the undivided third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance pro-

vided for in section 9-914''. It has never been doubted that under the foregoing provision the court could enter a decree for carrying out the award made mandatory by the statute; equally, we think, under the present statute, the court may enter a judgment to make effective its division of personal property, including money.

 While it is true that the divorce court cannot exercise any powers not conferred upon it by statute, and cannot, for example, award alimony to a party at fault (*Gibson v. Gibson,* 193 Or 139, 237 P2d 498; *Garner v. Garner,* 182 Or 549, 189 P2d 397) or award to the party against whom the decree of divorce is given any part of the property of the other party (*Polanski v. Polanski,* 193 Or 429, 432, 238 P2d 739), the doctrine of limited powers will not be carried to the extent of withholding from the court the power to make effective jurisdiction expressly conferred. By ORS 1.160 it is provided in part:

"When jurisdiction is, by the constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given".

In *Kelly v. Kelly,* 183 Or 169, 180, 181, 191 P2d 656, we held that a circuit court exercising the jurisdiction specially conferred upon it to grant legal separations, had also the power, under the statute just quoted, to hear and dispose of defenses to such a suit. In that case the defense interposed was that the parties had already been divorced in Nevada. We sustained the circuit court's holding that the divorce was invalid, and, against the claim that the court had not been given jurisdiction to decide that issue, held that the right to make such a determination was necessarily implied as one of the usual incidental powers essential to effectuate the grant of jurisdiction. We think

that the jurisdiction of a divorce court to make an award of property to the prevailing party necessarily carries with it the power to effectuate the jurisdiction thus granted by entering a judgment for the recovery of money constituting a part of the award.

Pointing to the absence of any provision in the contract for the entry of a judgment, the defendant says that there is no judgment because the parties intended none. We think that the argument is beside the point. The question is not whether the parties intended that a judgment should be entered, but what the court intended. *Whittier v. Whittier*, 237 Ia 655, 23 NW2d 435; 1 Freeman on Judgments (5th ed) 121 § 69; 27 CJS 1026, Divorce § 251 (b). As we have seen, the court had power to grant a judgment to effectuate an award of property to the plaintiff. It might have made the agreement of the parties the basis for such an award, or, instead, it might have adopted any other measure that appeared to it to be equitable under the statute. Even though the parties had expressly stipulated against the entry of a judgment, the jurisdiction of the court could not have been by that means limited, since it is the statute, not an agreement of the parties, which is the source of its power. *Hagen v. Hagen*, 193 Or 369, 238 P2d 747, cited by the defendants, contains nothing to the contrary. As we understand the case, it holds that where the husband and wife entered into a property settlement contract, which recited the pendency of a divorce suit and contained an agreement for the payment by the husband to the wife of a monthly sum for the support of herself and their children, but the terms of the contract did not appear in the pleadings nor in the decree in the divorce suit, the rights of the parties rested upon the contract and not upon the decree, notwithstanding a provision

in the decree approving the terms of the agreement without setting them forth. 193 Or 381. The wife, therefore, was permitted to maintain an action on the contract based upon the husband's failure to comply with his agreement. The case is far from standing for the proposition that the parties must stipulate that their agreement be made a part of the decree before the court can use it as the basis for a property award such as the present statute authorizes. And it recognizes the principle, which was applied in the Prime case, that such a contract, incorporated in and made a part of the divorce decree, is merged in the decree.

For the foregoing reasons, also, the contention in defendants' brief that this is not a valid judgment by consent, as authorized by ORS 26.010 to 26.040, because the statutory requirements for such a judgment were not complied with, is irrelevant.

■ The modern rule for interpreting the language of a judicial record is thus stated in Freeman, op. cit. § 69:

> "But the use of any particular words or form of words is no longer essential, but any words of the same meaning or significance are sufficient, particularly on a collateral attack upon the judgment. Whatever may have been requisite formerly, it is evident that the sufficiency of the writing claimed to be a judgment must, at least under the code, be tested by its substance rather than by its form. If it corresponds with the definition of a judgment as established by the code; if it appears to have been intended by some competent tribunal as the determination of the rights of the parties to an action, and shows in intelligible language the relief granted,—its claim to confidence will not be lessened by a want of technical form, nor by the absence of language commonly deemed especially appropriate to formal judicial records."

See, also, 1 Black on Judgments (2d ed) 162-163 § 115; 49 CJS 180-183, Judgments § 62; *Whittier v. Whittier,* supra; *Baron v. Southern Scale & Fixture Co.,* 106 S C 342, 91 SE 321; *Hentig v. Johnson,* 8 Cal App 221, 96 P 390.

*Whittier v. Whittier,* supra, is closely in point. There the parties filed with the clerk of the court a stipulation signed by them which stated in substance "that in the event the court grants plaintiff a divorce, the property rights of the parties are hereby settled and agreed upon in accordance with the following provisions * * * 2. Defendant is to pay as permanent alimony for plaintiff $30 per month, payable in advance commencing on December 1, 1939, at the office of the clerk of the district court of Linn County, Iowa". The definition of a judgment in Iowa is substantially identical with that in Oregon. The court, after pointing out that the use of particular forms of words is not essential to a judgment and referring to the passage from Freeman which we have quoted, said:

> "To entitle plaintiff to a reversal it is necessary to hold only that she has a judgment or order requiring the payment of money. However, in view of the above considerations, it would seem plaintiff holds a judgment even though greater formality might well have been followed in the language used. A judgment is to be construed like other written instruments. The determinative factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly implied as well as to that which is expressed. 30 Am.Jur. 834, section 31; Weir & Russell Lbr. Co. v. Kempf, 234 Iowa 450, 455, 12 N. W. 2d 857, 860."

The court concluded that it was the intention of the trial court to make a final determination of the rights of the parties, and therefore that the instrument in question constituted a judgment.

What we have already said upon the question sufficently shows that there is no validity in counsel's attempt to distinguish this case because the stipulation of settlement referred to the contingency of a divorce. The Iowa court did not base its decision upon that fact, but upon the language of the decree as disclosing *the intention of the court.*

 We think that the language of the decree here clearly shows an intention to enter a judgment for the plaintiff and against the defendant for $8,000.00 payable in installments as stated. If this be not so, then we are at a loss to say what purpose the decree was to serve. By providing that the property rights of the parties are "determined" in accordance with the contract and incorporating in the decree, and making a part thereof, the contract with its stipulation that "the husband shall pay to the wife as property settlement the sum of eight thousand dollars", etc., the court as effectively rendered a judgment for that sum as would have been the case had it used more conventional language. That this was a "final determination of the rights of the parties" there can be no doubt whatever, for, of course, it was not subject to modification and could never be disturbed except on appeal.

It is scarcely necessary to point out the difference between this provision and the decree in *Mansfield v. Hill,* 56 Or 400, 408-409, 413, 107 P 471, 108 P 1007, for the payment by the husband to the wife of monthly sums for the education of the children until the further order of the court. This was held not to be a judgment which might become a lien upon the husband's property because it was "not a definite liability or a judgment for a specific sum" and could be "terminated at any time" and because the amount of it was impossible of computation. To the same effect see *Mason v.*

*Mason,* 148 Or 34, 41, 34 P2d 328. The amount here is specific and not subject to change, and it is required to be paid within a definite time.

In 1921 the legislature amended the statute regarding alimony and child support so as to make the decree "a final judgment as to any instalment or payments of money provided for therein which have accrued up to the time either party shall move the court to set aside, alter or modify the same": General Laws of Oregon 1921, ch 114, now ORS 107.130. Construing this statute in *Forbes v. Jennings,* 124 Or 497, 264 P 856, we held that it created a valid lien as to installments of alimony due and unpaid, but expressly refrained from deciding whether "a decree properly docketed creates a lien superior to a conveyance made prior to installments not due at the time of such conveyance." 124 Or 507. See, also, *Stephens v. Stephens,* 170 Or 363, 132 P2d 992.

In *Warrington v. Warrington,* 160 Or 77, 83 P2d 479, a decree for alimony in the sum of $2,000.00 payable in monthly installments of $35.00 each was held to be subject to modification. The plaintiff argued that the decree could not be modified because it was based upon an agreement of the parties. The court held the contention unsound where the provision is one for alimony rather than a property settlement. It did not appear that the decree had been docketed, and the question whether the decree constituted a judgment entitled to be docketed was neither raised by the parties nor discussed by the court. In any event, the case is not controlling here because, under the express terms of the statute, a decree for alimony is only a final judgment as to installments "which have accrued", etc. For a similar reason *Phy v. Phy,* 116 Or 31, 236 P 751, 240 P 237, decided before the amendment of the

alimony statute and holding that a decree for alimony based upon an agreement of the parties is subject to modification, is not in point. It should be noted that the contrary decision in the earlier case of *Henderson v. Henderson,* 37 Or 141, 60 P 597, 61 P 136, 48 LRA 766, 82 Am St Rep 741, was overruled by the Warrington case. 160 Or 82.

Defendants cite *Lane v. Beveridge,* 135 Or 559, 296 P 872. The court held in that case that a decree in a suit to foreclose a mortgage, which "ordered, adjudged and decreed that there is now due and owing" to the mortgagee from the mortgagors a specified sum of money, and that the mortgagors "are personally liable on the whole of said amount" together with a specified sum as an attorneys' fee, and that "said amounts * * * are a valid first lien" upon the mortgaged property, and that the property should be sold and the proceeds arising from the sale "applied to and upon the payment" of the moneys so found to be due, was not a judgment. The decree further provided that if the moneys arising from the sale should be insufficient to pay the amount found due and the costs of sale "the Sheriff specify the amount of such deficiency and balance due [the mortgagee] in his return of sale and that on the coming in and filing of said return, the clerk of this court docket a judgment for such balance against" the mortgagors, and that the mortgagors "pay to [the mortgagee] the amount of said deficiency and judgment with interest", etc. The return of the sheriff showed the amount for which the property sold and the amount of his lawful fees. Ascertainment of the deficiency was a simple matter of mathematical computation. Nevertheless, the opinion indicates that the county clerk could not be charged with negligence in failing to docket the judgment for

the deficiency because the sheriff failed to specify the amount of the deficiency in his return. There is a difference of judicial opinion as to whether it is technically correct to enter a so-called "deficiency judgment" in a mortgage foreclosure suit or whether the only judgment to be rendered is one for the full amount due on the note secured by the mortgage. See *Wright v. Wimberly,* 94 Or 1, 184 P 740, and specially concurring opinions of BENNETT, HARRIS and BURNETT, JJ. Under either view of that question, we think that *Lane v. Beveridge* was wrongly decided. It is out of harmony with the modern rules for interpreting judicial records and is, therefore, overruled.

Defendants say that an order to pay a lump sum of money in installments cannot be considered a present judgment because of the provision of ORS 23.030 that "The party in whose favor a judgment is given, which requires the payment of money \* \* \* may at any time after the entry thereof, and so long as the judgment remains a lien, have a writ of execution issued for its enforcement." The argument is, in effect, that, since no execution can issue until an installment becames due, there is no judgment at the time of the rendition of the decree.

Such an interpretation of the statute would bring it into conflict with other statutes defining a judgment as a final determination of the rights of the parties, requiring the clerk to docket the judgment and making it a lien from the day of docketing on the real property of the defendant. ORS 23.030 was enacted for the purpose of providing the means for enforcing a lien, and the fact that it may not be immediately enforced does not make it any the less a lien.

The question whether a judgment payable in future installments may constitute a lien has arisen most

frequently in cases involving decrees for alimony. As we have seen, this court has held that such a decree, being for an indefinite amount and subject to modification, could not become a lien on real property. But neither our decisions nor those of other courts have been put upon the ground, merely, that enforcement of such a decree is, under its terms, deferred. The reasoning is, as stated in 2 Freeman, op. cit., 1965 § 932, that to make such a judgment a lien "would amount to charging the property with an annuity and would embarrass its alienation, and furthermore the amount is uncertain and impossible of computation."

Some courts have held that a decree for alimony payable in installments is a lien upon the property of the defendant. In *Westmoreland v. Dodd*, 2 F2d 212 (CCA 5), 39 ALR 1279 (reversing *In re Westmoreland*, 298 Fed 484), a decree of a Georgia court awarding to the wife $200.00 a month as permanent alimony during her lifetime or until she should remarry, was held to be a judgment, the lien of which had priority over the title of a trustee in bankruptcy of the judgment debtor, not only as to installments past due but as to future installments. Under Georgia law alimony is an allowance of the husband's estate, and a fixed obligation which cannot afterwards be altered or amended even by the court which granted it. The court said:

"* * * The lien is as certain as it would have been if it had been placed by the decree upon specific property. It is as certain as dower is, and would have continued against other judgments as to this property, except for the bankruptcy proceedings. Such a lien cannot, therefore, be said to be against the public policy of Georgia, as in restraint of alienation."

The Supreme Court of Georgia in *Chero-Cola Company v. May*, 169 Ga 273, 149 SE 895, reached a dif-

ferent conclusion, the court relying largely on the reasoning of the district judge in the Westmoreland case, who had held that the decree for alimony was a lien only as to installments in arrears. The district judge said that the amount for which the husband in the divorce suit might be liable was too uncertain to be the subject of a lien; that, while the former wife's chance of life might be estimated by the tables of mortality, this was not so of the chance of her remarriage; and, since in Georgia a judgment lien attaches to all property acquired by the defendant in the future, if the decree were given the effect of a lien as to future installments, it would constitute an unreasonable restraint on alienation. In this connection the district judge called attention to the fact that the debtor could not "relieve himself by paying off the hindering lien."

In *Isaacs v. Isaacs,* 117 Va 730, 86 SE 105, LRA 1916B 648, the court held that a decree for alimony in the sum of $50.00 a month, to remain in force during the lifetime of the wife, constituted a judgment and a lien against all the property of the defendant, and that such a lien should be accorded priority over the lien of a subsequent judgment against the defendant, not only for such sums as had accrued under the decree up to the date of the subsequent judgment, but also for subsequently accruing installments. See, also, *Bray v. Landergren,* 161 Va 699, 172 SE 252. A similar decision is *Goff v. Goff,* 60 W Va 9, 22, 53 SE 769, 9 Ann Cas 1083, where the decree allowed the wife $1,200.00 annually during the joint lives of the parties, and declared the alimony a lien on all the real estate owned by the defendant. The court said:

> "No particular property is before the court or subjected by the decree. The decree declares a general lien. The decree adjudges Goff to pay fixed

sums at fixed times in future. Our Code says that 'every judgment for money rendered in this State heretofore or hereafter against a person shall be a lien on *all* real estate of or to which such person shall be entitled at or after the date of such judgment.' Does the fact that payment is to be made in future change the matter? Why should it? Here is a final adjudication of present liability, only it is to be discharged in future. Of course, a decree for a gross sum as alimony is a lien by the letter of the statute [citing cases]. * * * By reason of our statute making 'every judgment' a general lien on all the defendant's land, there need be no specified property charged by the decree. The only question is whether future installments are a lien. We think they are. Should the door be left open so that Goff might by conveyance dispose of his property and wholly defeat his wife's alimony? She has, by law, right to look to her husband's estate for reasonable support. * * * *As the decree is by law a lien without the decree's so saying, its declaring it such is not error."* (Last italics added.)

*Buffalo Savings Bank v. Hunt,* 118 NYS 1021, is a nisi prius decision to like effect.

The Georgia court in the Chero-Cola Company case distinguished the Virginia and West Virginia cases on the ground that the decrees in those cases expressly established liens on the real estate of defendant. But it is to be observed that the West Virginia court, in the portion of the opinion just quoted, based its decision on the general lien statute which is similar to ours, and that the Virginia court, in referring to the Goff case, stated that their statute was identical with the Virginia statute. See Virginia Code 1904 § 3567; Code of West Virginia 1899, ch 139 § 6. It is further to be observed that the decrees for alimony in the Virginia and West Virginia cases were evidently not subject to modification. While the statutes of those states contain express

provisions for revising a decree for custody and support of minor children, there is no such provision concerning the decree for alimony. But the court is empowered, when decreeing a divorce, to "make such further decree as it shall deem expedient concerning the estate and maintenance of the parties". Virginia Code 1904 § 2263; Code of West Virginia 1899, ch 64 § 11. In neither of the decrees in question was there any reservation of the right to modify.

*Ulman v. Ulman,* 148 Mich 353, 111 NW 1072, is another case holding a decree for alimony payable in installments to be a lien on the property of the husband, but, as the decision depends upon a statute expressly so providing, it is of doubtful value in the present discussion. For other like decisions, and decisions involving liens created by the court, see annotation, 169 ALR 641.

The objections which the Georgia court thought fatal to the contention that the alimony decree constituted a lien in the Chero-Cola Company case are entirely absent here. There is no uncertainty in the amount of the liability of the defendant in the divorce suit nor in the length of time during which the judgment can remain a lien against his real estate. There is no unreasonable restraint upon alienation, because, while he might have satisfied the obligation by paying it in monthly installments, he was not required to do so but could have paid the entire sum immediately. The Virginia and West Virginia cases go farther than it is necessary for us to go because they held that the decrees there involved constituted judgments, the liens of which had priority over subsequent encumbrances notwithstanding the uncertainty in the amount and duration of the liability.

In our opinion, a decree in a divorce suit requir-

ing the party against whom the decree is entered to pay to the other party a lump sum, albeit in installments of specified amounts, and at fixed times, as an award of property under the statute, constitutes a judgment entitled to be docketed, and, when docketed, a lien upon the real estate of the judgment debtor, not only as to past, but also as to future, installments.

■ The defendants contend that the judgment is too ambiguous to be entitled to docketing because of the language in another paragraph of the decree "until said full sum of Thirty-six hundred dollars has been paid to her." This, to be sure, is an obscure reference, since there is no sum of $3,600.00 mentioned elsewhere in the decree. It is impossible to interpret it, but it would be wholly unreasonable to say that it has any bearing on the sum of $8,000.00 for which judgment was given. The ambiguity is not in the judgment, but in the paragraph of the decree containing the statement about $3,600.00.

■ We have considered the defendants' contention that the complainant does not allege that the failure to docket the decree was the proximate cause of the plaintiff's loss. We think that a mere reading of the complaint discloses the contrary.

The final question arises out of plaintiff's assignment of error to the ruling of the court striking from the complaint the allegation that "the sum of $1,500 is a reasonable amount to be awarded plaintiff as attorneys' fees herein." Separate motions to strike were filed by each of the defendants, and both motions were allowed. The defendants argue that, while, under the statute, the plaintiff, if successful, would ordinarily be entitled to recover an attorney's fee from the surety company (ORS 736.325), there is no similar liability of the defendant Mrs. Casteel. Plaintiff cites *State v.*

*Claypool,* 145 Or 615, 621-623, 28 P2d 882, in which we approved an allowance of an attorney's fee against a county treasurer and her surety, but in that case the county treasurer defaulted, and the question that we have here was not raised either in the trial court or on appeal.

The present action was brought under the authority of ORS 30.220, which reads:

"When a public officer by official misconduct or neglect of duty forfeits his official undertaking or other security, or renders his sureties liable thereon, any person injured by the misconduct or neglect, or who is by law entitled to the benefit of the security, may maintain an action thereon in his own name, against the officer and his sureties, to recover the amount to which he may by reason thereof be entitled."

The official undertaking given by the defendant surety company is, by its terms, the joint and several obligation of the clerk and the surety. There can be no question but that, by virtue of the statute, the liability of the surety company, if established, is a primary liability. So that we have a case in which defendants, who may be jointly and severally liable, are joined in the same action. It is too well established to require extensive citation of authority that in such a proceeding a judgment may not be recovered in one amount against one defendant and in a different amount against another. *Fennell v. Hauser,* 145 Or 351, 357, 27 P2d 685, 28 P2d 245. It is entirely clear that the Circuit Court was right in allowing the motion of the defendant Mrs. Casteel to strike the allegation concerning attorneys' fee, because no such fee can be recovered from her under the law. On the other hand, if the allegation were permitted to stand as to the surety company, then it could occur that a judgment

in one amount would be recovered against one defendant and in a different amount against the other. The plaintiff was not required to sue these defendants jointly. Having done so, she has created a situation in which she must be held to have abandoned her right to recover an attorney's fee to which, under different circumstances, she might be entitled. The court committed no error in allowing the motions to strike.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

SUBMITTED ON APPELLANT'S MOTION FOR MODIFI-
CATION OF OPINION

*Koerner, Young, McColloch & Dezendorf, Joseph
Larkin* and *James H. Clarke,* Portland, for the motion.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN
and LUSK, Justices.

## LUSK, J.

Plaintiff's motion to modify the opinion insofar as it holds that no attorney's fee can be recovered in this action is allowed in part. The point is ruled by two decisions not heretofore called to our attention: *Grandy v. Williams,* 147 Or 409, 425, 34 P2d 622; *Closset v. Portland Amusement Co.,* 134 Or 414, 421, 290 P 556, 293 P 720. These cases hold that in an action on a single obligation against defendants, jointly and severally liable, it is not a valid ground of objection that different defendants may be liable in different amounts. The Grandy case was an action against a trustee and a surety on his bond. A decree for plaintiff, which included the recovery of an attorney's fee from both defendants, was affirmed, but the court said at p. 425:

> "The plaintiff is entitled to recover attorney's fees from the defendant surety company. It is not important that the amount for which a certain defendant is liable differs from the amount for which another defendant is liable."

This language would indicate that the court intended to approve the recovery of an attorney's fee from the

surety only and that affirmance of the decree in its entirety was an inadvertence. However that may be, since the statute authorizes recovery of an attorney's fee only from the surety company (ORS 736.325), we hold that the circuit court was right in striking from the complaint the claim for an attorney's fee against the defendant, Mrs. Beulah A. Esselstyn, but erred in striking such claim against the defendant surety company. This ruling does not conflict with *Fennell v. Hauser,* 145 Or 351, 27 P2d 685, 28 P2d 245, cited in our former opinion. The defendants in that case were sued as members of a voluntary association upon a number of claims arising out of contract which had been assigned to the plaintiff, and the action was brought on the theory that all the defendants joined in authority given to an agent to enter into such contracts. It was held that recovery could be had on those contracts only which were entered into on behalf of all the defendants, and that as to such contracts the defendants were each liable in the same amounts. The real basis of the ruling was not that the different parties to a joint and several obligation may not be liable in different amounts, but that, if some of the defendants were found liable on some of the contracts and others on other contracts, the result would be a misjoinder of causes of action. The case, therefore, is not authority for the conclusion reached upon this question in our former opinion. That part of the opinion will be considered withdrawn.

SUBMITTED ON RESPONDENT'S PETITION FOR
REHEARING

*Kilkenny & Fabre,* Pendleton, for the petition.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN and LUSK, Justices.

LUSK, J.

In a petition for rehearing the defendants again press upon us for consideration the case of *Lane v. Beveridge,* 135 Or 559, 296 P 872, contending that the clerk of the court had the right to rely on that decision and that we erred in overruling it.

As appears from the analysis of the case in our former opinion, *Lane v. Beveridge* involves two questions: First, whether the foreclosure decree provided for judgments for the amounts of the indebtedness owing to the holders of the first and second mortgages, respectively; and, second, whether it provided for a judgment for the deficiency arising after the sheriff's

sale. As to the first question, the apparent basis of the decision was that satisfaction of the amounts found due and owing by the court was limited to the proceeds of sale of the mortgaged premises; while as to the second, the court ruled that, because the sheriff in his return had not followed the direction of the decree to specify the amount of the deficiency, no duty of the clerk to docket such amount as a judgment arose. Its mere statement shows that the decision of the second question can have no possible bearing on this case. As to the first question the court said:

> "The decree in the foreclosure suit did not provide for judgment against J. E. Shears and Mary Shears; therefore it did not constitute a lien against the property. The only provision we find is that the property be sold and if the sheriff's return showed a deficiency in favor of Josephine Evans that a deficiency judgment be docketed." 135 Or 564.

While some of the language of the opinion is obscure, the court evidently concluded, upon a consideration of the entire decree, that its provisions meant no more than that an amount of money found to be due and owing to the mortgagees should be satisfied out of the proceeds of the sale of the mortgaged premises. For that reason, it was not a judgment for money, but, rather, the mere judicial impression of a lien on land. We are not concerned with any such provisions here. *Lane v. Beveridge* does not control the present question, which (apart from the contention respecting the powers of a divorce court) is simply whether a provision in a decree that the defendant shall pay to the plaintiff a sum of money constitutes a judgment. Nevertheless, in view of the possibility that the rule of law as announced in *Lane v. Beveridge* may have affected

property rights and guided the conduct of public officials, we deem it our duty, under the doctrine of *stare decisis,* to withdraw the statement in our former opinion overruling this decision.

Much of the able brief filed by the petitioner is devoted to reargument of propositions heretofore fully argued and to which the court gave careful consideration. The only matters which we think call for comment now are the following:

 It is contended that our holding that the circuit court, sitting as a divorce court, has authority to enter a judgment for money as a part of a settlement of property rights is inconsistent with what we said in *State ex rel v. Tolls,* 160 Or 317, 85 P2d 366, 119 ALR 1370 (a case not heretofore cited), on the subject of limited powers of a divorce court. In the Tolls case we held, following numerous precedents, that an order in a divorce suit, made before decree, for the payment by the husband to the wife of suit money and temporary alimony, was not a judgment entitled to be docketed. The authority to make such an order was at that time provided for by Oregon Code 1930 § 6-913, now ORS 107.090 (1) (a). As the opinion points out, such an order is not a judgment because it is interlocutory, not final, and subject to modification at any time. In view of the fact that the only statute which authorized an award of this kind during the pendency of the divorce suit was the one above cited, we called attention to the rule that the court in a divorce suit exercises purely statutory powers. It followed that the order could not be regarded as a judgment even though the court which made it so intended. But here we are dealing with power of quite a different sort. The award of property in the final decree of divorce has finality, and, where the award is of money, as in this case, a reasonable

construction of the statute, as we attempted to demonstrate in our former opinion, leads to the conclusion that the court may exercise the discretion and authority vested in it by the entry of a judgment. In addition to what we have already said on the subject, we may add that Oregon Laws 1947, ch 557, the statute in question, grants the power to the court to make an award of real and personal property in a final decree, and it is always appropriate in a decree in a suit in equity to provide for a money judgment which may be warranted under the issues and the evidence. In our opinion, it would be an unjustifiably narrow construction of this statute to say that it was intended to withhold this power from the court where the award is of money. There is here no inconsistency with the Tolls case. In each case we have merely given effect to a statute properly construed in the light of the rule that the powers involved are purely statutory.

■ It is argued that the court has assumed that the complaint in the divorce suit out of which this litigation arises was sufficiently broad to justify the entry of a personal judgment against the defendant therein, and that, since this assumption may be erroneous, we should determine now what the ruling would be if that complaint is inadequate for such a purpose. The court can only decide questions that are before it. The case is here on a demurrer to a complaint which sets up the decree in the divorce suit as an exhibit. Counsel for the defendants could have raised the question now suggested by filing an answer to the complaint in the case at bar which disclosed the allegations of the complaint in the divorce suit. They did not choose to do so, and the decision of what is now purely a hypothetical question will have to await future developments.

The petition for rehearing is denied.